166 F.3d 65
 1999 Copr.L.Dec. P 27,858, 49 U.S.P.Q.2d 1516,
27 Media L. Rep. 1171
 NIHON KEIZAI SHIMBUN, INC., Plaintiff-Counter-Defendant-Appellee,
v.
COMLINE BUSINESS DATA, INC., Yoshinobu Okuma, Hiroyuki
Takagi, Haruhisa Morimoto, also known as Hal,
Defendants-Counter-Claimants-Appellants,
Terry Silveria, Defendant.
 Docket No. 98-7842.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 24, 1998.
Decided Jan. 22, 1999.
 
 Norman H. Zivin, Cooper & Dunham LLP (Donna A. Tobin, of counsel), New York, NY, for Defendants-Appellants.
 Victor H. Polk, Jr., Bingham Dana, LLP, Boston, MA (Gary A. Adler, Bingham Dana Murase, New York, NY, on the brief), for Plaintiff-Appellee.
 Before: MESKILL, WALKER, and SACK, Circuit Judges.
 JOHN M. WALKER, JR., Circuit Judge:
 
 
 1
 Defendants Comline Business Data, Inc., Yoshinobu Okuma, Hiroyuki Takagi, and Haruhisa Morimoto appeal from the June 3, 1998 judgment entered in the United States District Court for the Southern District of New York. After a bench trial, Judge Denise L. Cote found that defendants had infringed the copyrights and trademark of plaintiff Nihon Keizai Shimbun, Inc. For the following reasons, we affirm in part, reverse in part, and remand for reconsideration of damages in light of this opinion.
 
 BACKGROUND
 
 2
 Nihon Keizai Shimbun ("Nikkei") is a Japanese corporation that publishes financial, business and industry news. Nikkei publishes the Japanese newspapers Nihon Keizai Shimbun, Nikkei Kinyu Shimbun, Nikkei Sangyo Shimbun, and Nikkei Ryutsu Shimbun, as well as an English newspaper, the Nikkei Weekly. Nikkei sells these newspapers around the world, in their original languages and in translation. Nikkei also makes many of its Japanese articles available in English through wire services, an English language website, and a licensing agreement with LEXIS/NEXIS.
 
 
 3
 Defendant Comline Business Data, Inc. gathered news articles from a variety of sources and sold "abstracts"--or, less charitably, rough translations--of those articles to its customers. Comline editors selected the articles and forwarded them to "abstractors" or "translators," sometimes pre-editing them to a desired length. The abstractors translated the stories into English; Comline "rewriters" then edited the abstracts into a consistent style. The district court found that it took a total of approximately 36 minutes per piece for Comline to convert a news article into a Comline abstract. Comline published about 17,000 abstracts in 1997, approximately one-third of which were derived from Nikkei news sources.
 
 
 4
 In August of 1997, Nikkei began to file periodic applications for United States copyright registration of its news articles. Nikkei also holds certain registered United States trademarks, including "Nikkei" and "Nikkei Weekly." On January 29, 1998, Nikkei filed this action against Comline and the three officers named in the caption alleging that Comline's abstracts unlawfully infringed Nikkei's copyrights and its "Nikkei" trademark.
 
 
 5
 The district court conducted a two-day bench trial. Comline's principal defenses were that it had copied only facts that were not subject to copyright, and that in any event its abstracts constituted fair use. In a detailed decision issued from the bench, the district court rejected Comline's fair use argument and found that Comline had infringed 22 of Nikkei's articles. The district court awarded Nikkei statutory damages of $220,000, attorney's fees of $200,000, and a declaratory judgment that the 22 abstracts were infringements; in addition, the district court permanently enjoined Comline from publishing abstracts that were substantially similar to Nikkei articles. The district court also found that Comline had infringed the "Nikkei" trademark and enjoined Comline from using the mark. The defendants appealed.
 
 DISCUSSION
 
 6
 Defendants argue that: (1) Comline's abstracts did not infringe Nikkei's copyrights because they only copied unprotected facts; (2) Comline's abstracts constituted fair use of Nikkei's copyrighted works; (3) the use of "Nikkei" as a reference to the source of the abstracts was not a trademark use, and therefore did not infringe Nikkei's trademark; (4) the district court abused its discretion in awarding statutory damages on the copyright claim; (5) the district court abused its discretion in awarding attorney's fees; (6) the district court's injunction is an unconstitutional prior restraint; (7) the principles of laches and acquiescence bar any relief for Nikkei; and (8) the district court lacked personal jurisdiction over defendants Okuma and Takagi.
 
 I. Copyright Infringement
 
 7
 The Copyright Act of 1976, 17 U.S.C. §§ 101-803, grants copyright holders the exclusive rights to "reproduce the copyrighted work in copies" and to "prepare derivative works based upon the copyrighted work." Id. at § 106. To sustain a claim of copyright infringement, a plaintiff must demonstrate first that a copyrighted work was actually copied, and second, that the copying amounted to an improper or unlawful appropriation. See Castle Rock Entertainment, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 137 (2d Cir.1998); Laureyssens v. Idea Group, Inc., 964 F.2d 131, 139-40 (2d Cir.1992). After proving that the copyrighted work was actually copied, a plaintiff must establish that the copying was improper or unlawful by showing that the second work bears a "substantial similarity" to protected expression in the copyrighted work. Repp v. Webber, 132 F.3d 882, 889 (2d Cir.1997), cert. denied, --- U.S. ----, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998); Laureyssens, 964 F.2d at 140.
 
 
 8
 Defendants do not dispute the element of actual copying. Comline worked directly from Nikkei's news articles in creating its news abstracts. The only question presented is whether Comline's abstracts evidenced a substantial similarity to any protected expression in the Nikkei articles and thus amounted to an unlawful or improper appropriation of Nikkei's copyright. We review the district court's finding of "substantial similarity" de novo, employing our own comparison of the works in our analysis. See Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir.1995); Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 123 (2d Cir.1994).
 
 A. Substantial Similarity
 
 9
 Defendants argue that the only similarity between their abstracts and Nikkei's articles is that they report the same unprotected facts. That copyright does not extend to facts is a "most fundamental axiom of copyright law." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 344, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). The reason for this rule is that the law of copyright is founded on originality of expression--facts, by their nature, are never original to an author. See id. at 347, 111 S.Ct. 1282. Compilations of facts, however, may be protected by copyright because they can display originality in their selection, arrangement or presentation of facts. See id. at 348, 111 S.Ct. 1282. Descriptions of facts afford even more room for originality. The question, then, is not simply whether Comline copied from Nikkei's articles, but whether they copied expression original to Nikkei. See id. at 361, 111 S.Ct. 1282.
 
 
 10
 The standard test in determining substantial similarity is the "ordinary observer test": whether an average lay observer would overlook any dissimilarities between the works and would conclude that one was copied from the other. See Knitwaves, 71 F.3d at 1002; Fisher-Price, 25 F.3d at 123. Where the work at issue contains both protectible and unprotectible elements, the test must be "more discerning," excluding the unprotectible elements from consideration. See Knitwaves, 71 F.3d at 1002-03. Here, Comline had every right to republish the facts contained in Nikkei's articles; in determining substantial similarity, we must look only to the original elements in Nikkei's presentation of those facts. The appropriate inquiry is whether "the copying is quantitatively and qualitatively sufficient" to support a finding of infringement. Ringgold v. Black Entertainment Television, Inc., 126 F.3d 70, 75 (2d Cir.1997).
 
 
 11
 The district court determined that Nikkei's registered, copyrighted articles had been infringed by the corresponding Comline abstracts. Judge Cote relied primarily on Wainwright Sec. Inc. v. Wall St. Transcript Corp., 558 F.2d 91 (2d Cir.1977), which found that the defendant infringed the plaintiff's copyrights by summarizing its analytical financial reports, even though the summaries credited the plaintiff as a source. In Wainwright, we held that even though there can be no copyright in the news itself, copyright does protect "the manner of expression, the author's analysis or interpretation of events, the way he structures his material and marshals facts, his choice of words, and the emphasis he gives to particular developments." Id. at 95-96.
 
 
 12
 Comparing the 22 Comline abstracts to the 22 Nikkei articles, the district court found that Comline had used "the same structure and organization, follow [ed] the same chronological and substantive grouping of facts, and result[ed] in the same conclusions or resolutions, and in addition often employ[ed] identical phraseology and word choice." Judge Cote concluded that the abstracts displayed a substantial similarity to the protectible elements of the articles, and therefore infringed Nikkei's copyrights.
 
 
 13
 Our own examination of the Comline abstracts and Nikkei articles compels the same conclusion reached by the district court with regard to most of the abstracts. The Comline abstracts appear to be direct, if not word-for-word, translations of the Nikkei articles, edited only for clarity. The average Comline abstract uses about two-thirds of the protectible material in the corresponding Nikkei article. The abstracts track the information in the articles sentence by sentence, in sequence; only occasionally do the abstracts combine two Nikkei sentences, divide a sentence, or rearrange the facts among different sentences. Comline adopts, by and large, the exact same structure and organization of the facts reported by Nikkei.
 
 
 14
 There are, however, two exceptions. Comline's Exhibit 12E is truly an abstract only of the factual information in the corresponding Nikkei article, plaintiff's Exhibit 12C. In contrast to the other abstracts, the only similarities between these two works are their use of the same facts. Comline reports those facts in a different arrangement, with a different sentence structure and different phrasing. Because this abstract only repeats facts, which by their nature cannot receive legal protection from subsequent use, it does not infringe Nikkei's copyright. The abstract is not substantially similar to the article in the qualitative sense; it does not purloin protected expression. See Ringgold, 126 F.3d at 75.
 
 
 15
 There is one other exception among the 22 abstracts. Comline's Exhibit 21E, the abstract alleged to have infringed Nikkei's Exhibit 21C, only copies the first paragraph of a six-paragraph article. Comline's abstract copied approximately twenty percent of the material in the article; in contrast, the other, infringing abstracts typically copied well over half of the text of the corresponding articles. In the context of articles such as these, consisting almost entirely of Nikkei's reporting of unprotected facts, we conclude that this one-paragraph abstract of a six-paragraph article is not substantially similar to the Nikkei article in a quantitative sense. See id.
 
 
 16
 These two abstracts avoid infringement in entirely different fashions. Exhibit 12E, by incorporating the abstracted facts into new and original sentences, stays well clear of qualitative infringement even though the abstract uses nearly all of the facts contained in the corresponding article. Exhibit 21E, in contrast, because it does not attempt to utilize a different structure, is not at all qualitatively different from its source. It avoids infringement only through a lack of quantitative similarity, and it is a close call at that.
 
 
 17
 Copyright law does not admit of simple, bright-line rules. We do not intend to establish any principle that, as a quantitative matter, a work that copies twenty percent of a copyrighted work is never substantially similar. Rarely are the quantitative and qualitative analyses as separate and distilled as they are with respect to the two non-infringing abstracts in this case. It is not possible to determine infringement through a simple word count; the quantitative analysis of two works must always occur in the shadow of their qualitative nature. For example, different quantities of use may be required to support a finding of substantial similarity depending on whether the use is a direct quotation of a fictional work, or a paraphrase of a factual compilation. Where, as here, the copyrighted work contains both original and unprotected elements, a higher quantity of copying is required to support a finding of substantial similarity than when the infringed work is wholly original. With the foregoing in mind, we conclude that Exhibits 12E and 21E do not meet the threshold for copyright infringement.
 
 
 18
 Defendants also contend that their infringement of Nikkei's copyrights is de minimis because they only infringed a total of 20 articles out of the 90,000 that Nikkei publishes each year. We disagree. It is true that the de minimis infringement of a copyrighted work is not actionable. See Sandoval v. New Line Cinema Corp., 147 F.3d 215, 217 (2d Cir.1998). However, Nikkei is entitled to the separate legal protection of each of its articles, and Comline's failure to copy a larger percentage of Nikkei's total works does not insulate it from liability. We also reject defendants' argument that any infringement was de minimis because 20 abstracts represent only a tiny fraction of the 17,000 abstracts they published in 1997. As Learned Hand declared long ago, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir.1936).
 
 B. Fair Use
 
 19
 Defendants also argue that their abstracts of the Nikkei articles were a fair use of the articles. Fair use "tempers the protection of copyright by allowing an author to use a limited amount of copyrighted material under some circumstances." Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1373 (2d Cir.1993). Congress restated the common law tradition of fair use in the Copyright Act:
 
 
 20
 [T]he fair use of a copyrighted work, ... for purposes such as criticism, comment, news reporting, ... or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--
 
 
 21
 (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
 
 
 22
 (2) the nature of the copyrighted work;
 
 
 23
 (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
 
 
 24
 (4) the effect of the use upon the potential market for or value of the copyrighted work.
 
 
 25
 17 U.S.C. § 107. Defendants seek to avail themselves of the statute's fair use exception for "news reporting."
 
 
 26
 "Fair use is a mixed question of law and fact." Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 560, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). Accordingly, we review the district court's rejection of a fair use defense de novo, although we will uphold its subsidiary findings of fact unless they are clearly erroneous. See Infinity Broadcast Corp. v. Kirkwood, 150 F.3d 104, 107 (2d Cir.1998); Twin Peaks, 996 F.2d at 1374.
 
 
 27
 The district court found that, on balance, the fair use factors weigh against a finding of fair use. We agree.
 
 1. Purpose and Character of Use
 
 28
 It is true that Comline's abstracts were for the purpose of news reporting. But the fair use factor of purpose and character of use "is not an all-or-nothing matter." Twin Peaks, 996 F.2d at 1374. It requires a more nuanced analysis: it asks whether and to what extent the new work "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). If the second work is substantially transformative, this factor favors a finding of fair use. See id. In addition, use for commercial purposes tends to point this factor against fair use. See Leibovitz v. Paramount Pictures Corp., 137 F.3d 109, 113 (2d Cir.1998).
 
 
 29
 We agree with the district court that Comline's infringing abstracts are "not in the least 'transformative.' " As we note above, the abstracts are for the most part direct translations of Nikkei articles; defendants added almost nothing new in their works. This factor weighs strongly against fair use.
 
 2. Nature of the Copyrighted Work
 
 30
 The district court found that this factor also weighed against fair use, because the Nikkei articles are "creative and original works." But while the articles are original works, and thus protected by copyright, the law recognizes that "some works are closer to the core of intended copyright protection than others." Campbell, 510 U.S. at 586, 114 S.Ct. 1164. As predominantly factual news articles, Nikkei's articles are less close to the core than more fictional pieces, and their expressive elements, while protectible, are not dominant features of the works. See, e.g., Stewart v. Abend, 495 U.S. 207, 237, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) ("In general, fair use is more likely to be found in factual works than in fictional works."); Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 455 n. 40, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) ("Copying a news broadcast may have a stronger claim to fair use than copying a motion picture."). Accordingly, this factor is at most neutral on the question of fair use.
 
 
 31
 3. Amount and Substantiality of the Portion Used in Relation
 
 
 32
 to the Copyrighted Work as a Whole
 
 
 33
 The third factor, like the substantial similarity inquiry, "calls for thought not only about quantity of the materials used, but about their quality and importance, too." Campbell, 510 U.S. at 587, 114 S.Ct. 1164. The district court found that the abstracts copied "the crucial facts and ideas" contained in the articles. While this is unquestionably the case, any focus on which particular facts were copied is improper. As we indicate above, it would have been possible under the law for Comline to abstract the most important facts from the Nikkei articles without infringing Nikkei's copyrights at all, let alone using them unfairly. Crucial facts are entitled to no more protection than ancillary ones. In applying the third factor, "what is relevant is the amount and substantiality of the copyrighted expression that has been used, not the factual content of the material in the copyrighted works." Salinger v. Random House, Inc., 811 F.2d 90, 97 (2d Cir.1987).
 
 
 34
 We agree with the district court that this factor weighs against a finding of fair use. Just as the quantity of copying was sufficient to support a finding of substantial similarity for most of the challenged abstracts, the amount of copying of protectible expression tips this factor against fair use. See Ringgold, 126 F.3d at 75 & n. 4.
 
 
 35
 4. Effect of Use Upon Potential Market for or Value of
 
 Copyrighted Work
 
 36
 In considering the effect of the use on the market for the copyrighted work, we assess not only the harm caused by the alleged infringer, but also whether widespread conduct of this sort would have a substantial impact on the market for the original. See Campbell, 510 U.S. at 590, 114 S.Ct. 1164. The district court found that this factor weighed strongly against fair use because Comline's abstracts compete with and supersede the Nikkei articles. We entirely agree.
 
 
 37
 In sum, three of the four fair use factors militate against a finding of fair use, as does our overall balancing of these factors. We affirm the district court's holding that the infringing abstracts were not a fair use of Nikkei's articles.
 
 II. Trademark Infringement
 
 38
 The Lanham Act prohibits the commercial use of a registered trademark, without consent, in a manner that is likely to cause confusion as to the source of the product. See Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 (2d Cir.1995); 15 U.S.C. § 1114(1)(a). Like the Copyright Act, the Lanham Act codified a common law fair use defense: fair use is established where the use of the trademark is "a use, otherwise than as a mark, ... which is descriptive of and used fairly and in good faith only to describe the goods or services." 15 U.S.C. § 1115(b)(4). Put another way, "fair use permits others to use a protected mark to describe aspects of their own goods." Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 270 (2d Cir.1995).
 
 
 39
 Comline routinely used the "Nikkei" mark in the reference line of its abstracts. The district court held that this constituted trademark infringement, because consumers would draw the erroneous conclusion that the abstracts were authorized by Nikkei, and associate any errors in the abstracts with Nikkei. The district court rejected defendants' claim of fair use.
 
 
 40
 In our view, the use of the "Nikkei" mark to identify the abstracts is a fair use of Nikkei's trademark. An abstract is often as valuable for the source of its facts as it is for the facts it relates, and it will usually be impossible to identify the source of the factual information without using a registered trademark of the source. It would not be trademark infringement had Comline simply printed "The Nikkei Weekly reports that ..." at the beginning of the first sentence of each of its abstracts. We perceive little difference in Comline's use of the trademark at the end of the abstract, in the manner of a footnote or bibliography. And while other aspects of defendants' behavior may have evidenced bad faith, we see no basis for a finding of bad faith in their use of the "Nikkei" mark.
 
 
 41
 Accordingly, we hold that defendants' use of the "Nikkei" trademark was a fair use under the Lanham Act, and reverse the judgment against defendants for trademark infringement. We also vacate the injunction against defendants insofar as it relates to their use of the "Nikkei" mark.
 
 III. Statutory Damages
 
 42
 The district court awarded statutory damages on the copyright infringement claim in the amount of $10,000 for each of the infringed articles. Judge Cote made extensive findings of "willfulness" on the part of the defendants, and 17 U.S.C. § 504(c)(2) authorizes damages of up to $100,000 per work for willful infringement. This determination of willfulness was not clearly erroneous. See Twin Peaks, 996 F.2d at 1382. In light of this finding, the district court did not abuse its discretion in awarding $10,000 per infringed article. We decline to consider Comline's arguments that there were only two (as it argues in its main brief) or twelve (as it argues in its reply brief) instances of copyright infringement; those arguments were not presented to the district court and have been waived.
 
 
 43
 There is some ambiguity as to whether the district court found that 20 abstracts infringed Nikkei's copyrights (as we have concluded), or all 22. The district court stated at one point that it was "abundantly clear in 20 of the 22 articles that ... substantial similarity exists." However, the district court proceeded to award statutory damages of $10,000 for all 22 articles, and entered a declaratory judgment that "the 22 articles appended to the Complaint constitute infringements of its copyrights." Accordingly, we remand the case to the district court for recalculation of statutory damages in light of our holding that only 20 of the 22 abstracts infringed Nikkei's copyrights.
 
 IV. Attorney's Fees
 
 44
 The district court awarded Nikkei $200,000 in attorney's fees, a reduction from Nikkei's request of $402,033.25. After a careful examination of Nikkei's records in light of the relevant legal standards, the district court determined that $200,000 was a reasonable award. "We may reverse an award of attorney's fees only if the district court applied the wrong legal standard or abused its discretion." Knitwaves, 71 F.3d at 1012 (internal citations omitted). Judge Cote's award of $200,000, which was based solely on Nikkei's copyright claim, was in accordance with law and well within her proper discretion.
 
 V. Scope of the Permanent Injunction
 
 45
 After determining that defendants had infringed Nikkei's copyrights, the district court granted an injunction prohibiting defendants from
 
 
 46
 marketing, offering, selling, disposing of, licensing, leasing, transferring, disseminating, publishing, displaying, advertising, delivering, or printing, without [Nikkei's] written authorization, any copy, reproduction, translation, or abstraction of articles (or portions thereof), appearing in any [Nikkei] publication, that is substantially similar to any article or work produced by [Nikkei] ... and from participating or assisting in any such activities.
 
 
 47
 Defendants argue that this injunction is overly broad and represents an unconstitutional prior restraint on freedom of the press.
 
 
 48
 We have repeatedly rejected First Amendment challenges to injunctions from copyright infringement on the ground that First Amendment concerns are protected by and coextensive with the fair use doctrine. See Twin Peaks, 996 F.2d at 1378; New Era Pubs. Int'l, ApS v. Henry Holt & Co., 873 F.2d 576, 584 (2d Cir.1989) ("[T]he fair use doctrine encompasses all claims of first amendment in the copyright field."); Wainwright, 558 F.2d at 95 ("Conflicts between interests protected by the first amendment and the copyright laws thus far have been resolved by application of the fair use doctrine."). We have already determined that, as to the copyright claim, Comline's infringing abstracts were not fair uses of the Nikkei articles, and accordingly we reject defendants' First Amendment challenge.
 
 
 49
 The injunction is only intended to bar abstracts that constitute copyright infringement and are beyond fair use. Abstracts that do not infringe Nikkei's copyright, such as the two discussed above, are not barred by the injunction. The phrase "substantial similarity," conveying its particular legal significance, was designed to designate the proper boundary of the injunction. For additional clarity, however, we modify the injunction to replace "substantially similar to any article or work" with the phrase "substantially similar to the copyrighted elements of any article or work." We affirm the injunction as modified.
 
 VI. Laches and Acquiescence
 
 50
 Defendants also argue that any relief for Nikkei is barred by the doctrines of laches and acquiescence. We agree with the district court that these doctrines do not bar Nikkei's claims, given the district court's findings that defendants willfully infringed Nikkei's copyrights. See Harlequin Enters. Ltd. v. Gulf & W. Corp., 644 F.2d 946, 950 (2d Cir.1981) ("[L]aches is not a defense against injunctive relief when the defendant intended the infringement.").
 
 VII. Personal Jurisdiction
 
 51
 Finally, defendants Okuma and Takagi, the managing director and an executive director of Comline, respectively, assert that the district court did not have personal jurisdiction over them. They are citizens and residents of Japan, and they claim that they were not involved in Comline's day-to-day activity and did not exercise control over the infringing activity. We must reject this defense, however, because it was not properly presented to the district court and therefore was waived.
 
 CONCLUSION
 
 52
 For the foregoing reasons, we 1) affirm the judgment of copyright infringement for 20 of the 22 abstracts; 2) affirm the statutory damages award of $10,000 per infringing abstract; 3) affirm, as modified, the injunction against defendants based on copyright violations; 4) vacate and remand for reconsideration the awards of damages and declaratory judgment to ensure that those awards apply only to the 20 infringing abstracts; 5) affirm the award of attorney's fees; 6) reverse the judgment of trademark infringement; and 7) vacate the injunction related to defendants' use of Nikkei's trademark.
 
 
 53
 Affirmed in part, reversed in part, and remanded. Each party will bear its own costs.