Thomas **KERR**, Plaintiff

v.

The **NEW YORKER MAGAZINE, INC.,** and Anita Kunz, Defendants

No. 97 Civ. 5070(RO).

United States District Court,
S.D. New York.

July 16, 1999.

Sidley & Austin, New York City by James D. Arden, John J. Lavelle, Martin R. Scott, for plaintiff.

Davis Wright Tremaine, LLP, New York City by Elizabeth A. McNamara, Carolyn K. Foley, for defendant.

*MEMORANDUM AND ORDER*

OWEN, District Judge.

Plaintiff Thomas Kerr has sued defendants, the New Yorker Magazine and illustrator Anita Kunz, for copyright infringement pursuant to 17 U.S.C. § 101 *et seq.*, and Lanham Act claims pursuant to 15 U.S.C. § 1125(a). Plaintiff Kerr is an illustrator who alleges that the July 10, 1995 cover of the New Yorker—"Manhattan Mohawk" drawn by defendant Kunz—was copied from his 1989 drawing, "New York Hairline."[1] Both pictures depict a male figure with a "Mohawk" haircut (complete-

---

1. The original suit was also brought against Viva Las Vegastamps!, which was selling a stamp with the "Manhattan Mohawk" image. Kunz brought a cross-claim against Viva Las Vegastamps! for copyright infringement. Viva Las Vegastamps has since settled with both parties and agreed to stop selling the stamp and to destroy any remaining stamps. A stipulation was "so ordered" in late April, 1999 dismissing them from this action.

ly bald except for one strip of hair down the center of the head) in the shape of the Manhattan skyline. Defendants seek summary judgment, contending that Kunz developed the idea for a drawing of a punk with a "Mohawk" haircut on her own and that she did not copy plaintiff's drawing.

Plaintiff Thomas Kerr is a freelance illustrator who primarily works in pen and ink, but also "illustrates in color media." He teaches at the Art Institute of Boston at Leslie College. His works have appeared in the Washington Post, New York Newsday, Boston Globe, Fortune Magazine, the New York Times, among others, but they have never appeared on the cover of a national magazine nor been published in the New Yorker. The New Yorker Magazine did commission three drawings for which Kerr was paid, but these were never published. Kerr has also done several pictures with the New York skyline in strange places—the back of a dragon eating its own tail; and the inside of a crocodile's mouth.

Defendant, Anita Kerr, is a well-known Canadian illustrator who generally works in watercolor and gouache.[2] Her works have appeared on the covers of magazines like Time, Newsweek, Rolling Stone, Sports Illustrated, Business Week, and the Sunday magazine of the New York Times, the Boston Globe and the Washington Post, among others. She has won a number of prestigious illustration awards, and has taught at various universities. She has done several pictures which show objects coming out of people's heads—including a television antennae on top of a profile of a man's head (Boston Globe, 1988); the Eiffel tower coming out of a woman's head (Time–Out Paris, 1990); and a lighthouse coming out of a woman's head (LA Style, 1991). In addition, she did a brochure advertising Mohawk Paper Mills, Inc., which depicted the profile of a Native American with a Mohawk hairstyle in 1994.

Plaintiff Kerr's picture ("New York Skyline") is a pen-and-ink drawing depicting a male figure facing his viewer at a three-quarter view with a "Mohawk" hairstyle which forms the silhouette of the Manhattan skyline. Both eyes are visible and seem to watch the viewer. The figure has a long nose, a full bottom lip, and has a goatee in the shape of the Statue of Liberty. He wears a leather jacket and a t-shirt, and has shoulders in a realistic proportion to his head. The figure wears no jewelry, and the background is blank.

Defendant Kunz's picture ("Mohawk Manhattan") is in color and depicts a clean-shaven male figure with dark olive skin in profile wearing four earrings and a chain running from a pierced nostril to a pierced earlobe. The figure's head is tilted slightly downward, and the one eye that is visible is looking downward. The figure has full lips, a smooth, rounded chin, and a long, straight nose. The figure has a Mohawk hairstyle, which forms a silhouette of the Manhattan skyline with the buildings in a different order than in Kerr's image. It has a thick neck, with steeply sloped shoulders without clothing. The background is a night sky in several shades of blue and green, with faint images of clouds, a crescent moon, and many stars.

Kerr testified that he created "New York Skyline" sometime in 1989 or 1990, and registered it for copyright in January, 1996. In September, 1990, Kerr orally licensed "New York Hairline" to his business partner Joel Cohen to create postcards in return for half of the total cards printed to use as promotional mailers. Cohen testified that he printed about 1500–2000 cards, of which 22 were sold to SOHO stores in 1991–92. The card was also included in a catalogue called "Unusual Quill" that was distributed by Cohen in 1992, but discontinued because so few orders (about 25) were received. Kerr also testified that he received space on Cohen's website, money for entertainment expenses, and royalties as a result of the oral

2. A method of painting with opaque water colors prepared with gum.

license. Kerr claims that he sent out about 1200 postcards between 1991 and early 1993, at least three of which were sent to New Yorker employees, none of whom remember receiving it.[3] In 1993, Kerr gave one of his students oral permission to use the image on a t-shirt in return for a dozen of the t-shirts.

At some point in either 1994 or 1995, Kerr also gave a copy of the postcard to an acquaintance of his, James Yang, who was also an illustrator and a friend of Kunz. Kerr claims that Kunz saw the postcard when she visited Yang's studio, but Yang testified that he did not show the postcard to Kunz and that the only time she ever toured his studio was before he met Kerr. Kunz testified that she visited Yang's studio once or twice between June 1994 and November 1994. Kerr is unsure when he met Yang, but he thinks it could have been as early as 1994.

On November 10, 1994, Kerr attended the opening of Kunz's exhibition at the Foreign Press Center. He contends that he wore a "New York Hairline" t-shirt under an open jacket to the opening. Apparently, Kerr spoke briefly with Kunz on that occasion, so she had the opportunity to view the image. Defendants claim that Kunz would not have focused on the image because she spoke to more than a hundred people that night and only spoke to Kerr for a few moments. Kerr claims that he spoke with her at the beginning, before it was crowded, so she would have remembered. Although there is testimony that Kerr was a casual dresser who would have worn a t-shirt to an opening, only his own testimony supports the fact that he was wearing the t-shirt that night.

According to defendants, Francoise Mouly, the New Yorker Art Director, first contacted Kunz in the spring or summer of 1993, requesting Kunz to submit ideas for the cover of a special issue of the New Yorker. Mouly was familiar with Kunz's work and style, which "portrayed surrealistic worlds in meticulous detail." Kunz submitted several ideas, but another artist was chosen to do the cover. Mouly did send Kunz the New Yorker's publication schedule and invited her to submit ideas for covers. In March, 1995, Kunz jotted down some ideas for covers; these ideas included "NY on turtle back," "Statute of Liberty hailing a cab," "punk with skyline 'Mohawk.'" In May, 1995, Kunz faxed four sketches to Mouly, including a punk with a skyline Mohawk. Mouly was interested in the sketch—which she saw as a "hip" and "ethnic" "visual pun"—and the New Yorker editor approved it, and a finished rendering in acrylic was published on the cover of the July 10, 1995 issue.[4]

***Copyright Claim***

■ Summary judgment under Fed. R.Civ.P. 56(c) is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The moving party has the burden of demonstrating the absence of any material factual dispute and the court must make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment on a copyright claim is appropriate if the works share only unprotectible ideas, or if no reasonable jury could find that the works are substantially similar. *See Arica Institute v. Palmer,* 970 F.2d 1067, 1072 (2d Cir.1992).

■ The most basic proposition of copyright law is that the law does not protect an idea itself, but only a particular expression of that idea. *See* 17 U.S.C.

---

**3.** To bolster his claim, Kerr attaches a copy of his Rolodex to his affidavit. Defendants disparage its usefulness in supporting his claim, noting that it includes entries for Federal Express and art supply stores, to whom Kerr presumably did not sent postcards.

**4.** This issue was the "July 4th" issue because it hit newsstands on July 3, 1995. The image was meant—in part—to evoke the purchase of Manhattan from the Native Americans.

§ 102(b); *Williams v. Crichton,* 84 F.3d 581, 587 (2d Cir.1996). So, in order to prevail on a claim for copyright infringement under 17 U.S.C. § 101, plaintiff must prove "two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Matthew Bender & Co., Inc. v. West Publishing Co.,* 158 F.3d 674, 679 (2d Cir.1998) (citing *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). Here, defendants concede for the sake of this motion that plaintiff owns a valid copyright.[5] So, to prove infringement, "a plaintiff must demonstrate first that a copyrighted work was actually copied, and second, that the copying amounted to an improper or unlawful appropriation." *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,* 166 F.3d 65, 69–70 (2d Cir.1999). Because direct evidence of copying is rare, copying may be proven circumstantially, either by (1) a showing that (a) defendant had access to the plaintiff's work, and (b) that the two works are similar in way that is probative of copying; or (2) by a showing of striking similarity. *See Williams,* 84 F.3d at 587; *Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir. 1988). Once a plaintiff has proven copying, he must then show that the copying rises to the level of unlawful appropriation of copyrightable elements. *See Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119, 123 (2d Cir.1994). If the plaintiff is able to make out a prima facie claim for copyright infringement, the defendant may then offer proof of independent creation as an affirmative defense. *See Repp. v. Webber,* 132 F.3d 882, 889 (2d Cir.1997); *Folio Impressions v. Byer CA,* 937 F.2d 759, 765 (2d Cir.1991).

■ Here, plaintiff does not claim "striking similarity". Instead, Kerr contends that the two images are substantially similar.[6] Thus, plaintiff must prove that (1) Kunz had access to his work, and (2) that the works are substantially similar. "Access must be more than a bare possibility and may not be inferred through speculation or conjecture." *Gaste,* 863 F.2d at 1066. However, it is sufficient to show "access through third parties connected to both a plaintiff and a defendant." *Id.,* at 1066. Kerr contends that Kunz had access to his image on a number of different occasions: (1) through postcards sent to the New Yorker, (2) through seeing Cohen's postcard at a store in SOHO or in the catalogue, (3) through Yang, or (4) at Kunz's opening. Although these theories barely rise above "mere allegations that someone known to the defendant possessed the work in question," *Palmieri v. Estefan,* No. 91 Civ. 3098, 1995 WL 331719 (S.D.N.Y. June 5, 1995), construing all inferences in plaintiff's favor, as I must on this motion, these events are sufficient for a reasonable jury to find that Kunz had access to Kerr's work, even if it is unlikely that she actually saw the image.[7]

---

5. While registration of a copyright is ordinarily prima facie evidence of ownership of a valid copyright, this presumption only applies if the work is registered within five years of its first publication. 17 U.S.C. § 410(c). Here, Kerr alleges that he first published the image in September 1990, but it was not registered until January, 1996. Therefore, he is not entitled to a presumption of ownership, but defendants assume ownership of a valid copyright for purposes of this motion.

6. Indeed, Kerr contends that even Kunz admits that the images are similar. He cites an item that appeared in the Daily News on August 15, 1995, in which the two images appear and Kunz is quoted as saying "Yes, they are [similar]. This is quite upsetting to me. I have never seen that image before and I don't know [Kerr's] work." Declaration of Thomas Kerr dated April 19, 1999, Ex. U.

7. According to plaintiff, Kunz's early sketches of "Manhattan Mohawk" bear an even greater resemblance to "New York Hairline" than the finished product—i.e. rounded ears, skinnier neck and shoulders. Plaintiff contends that this similarity proves access, and that the subsequent changes which were made to the image—broadening the shoulders, pointing the ear—were done to conceal copying. This is mere speculation; at best, the evidence shows that Kunz might have been briefly exposed to defendant's image, but there is no evidence in the record to suggest that Kunz

After establishing access, a plaintiff must next show that the two works have similarities which are probative of copying. The similarities in this prong of the test need only "raise a question of actual copying"; they need not be "substantial." *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir.1992). Both images show a male figure facing left, with a Mohawk hairstyle in the shape of the New York City skyline. It is not clear that these similarities are sufficient to raise the possibility of actual copying; however, construing all inferences in favor of the non-moving party, a reasonable jury might find that they are sufficient.

■ However, in addition to showing copying, a plaintiff must show that the works are "substantially similar." The test used to determine substantial similarity is an "ordinary observer test: Whether an average lay observer would overlook any dissimilarities between the works and would conclude that one was copied from the other." Nihon Keizai Shimbun, Inc., 166 F.3d at 70. In practice, to assess a claim of substantial similarity, a court "must decide whether the similarities shared by the works are something more than generalized ideas or themes." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.1986). In other words, the unprotectible elements of the image must be excluded from consideration. *See Nihon Keizai Shimbun, Inc.*, 166 F.3d at 70. There can be no dispute that defendants cannot be held liable for using the idea of the New York City skyline on someone's head. *See Steinberg v. Columbia Pictures Ind., Inc.*, 663 F.Supp. 706, 711 (S.D.N.Y. 1987). Here, the similarities between the pictures are the "idea" of skyline as a haircut, and the other uncopyrightable elements which the "expression" of this "idea" might reasonably be expected to include: eyes, nose, mouth, a figure in profile, and certain N.Y. buildings. *See Folio Impressions*, 937 F.2d at 766 (finding that two drawings of roses were not substantially similar even though "by the rose's very nature one artist's rendering of it will closely resemble another artist's work"). These are common elements which any drawing of the New York City skyline as a haircut could be expected to include. *See Steinberg*, 663 F.Supp. at 713.

■ Although both images do include a male figure with a skyline Mohawk, the expressions of this idea are completely different. Kerr's black-and-white image is made with pen and ink and crosshatching. The figure appears in three-quarters profile, with two eyes visible, and meets the viewer's eyes. His leather jacket and goatee give him an aggressive and street-smart appearance. Kunz's image, in contrast, has very smooth lines and rounded contours. The buildings that make up the skyline appear in a different order, and they are more differentiated than Kerr's buildings. Kunz's picture is in color, with a fully-realized background. Her figure appears in a true profile, with one eye visible, and the figure looks downward. Moreover, Kunz's figure wears four earrings and a chain stretching from a pierced nostril to its ear, and has bare, non-realistically sloped shoulders.

This is not a case like *Steinberg*, 663 F.Supp. 706, where the defendant copied the plaintiff's style, as well as copying the actual imaginary buildings which plaintiff depicted. Here, the two figures have an entirely different "concept and feel." Kerr's pen and ink drawing has a sketchy, edgy feel to it, while Kunz's cool colors and smooth lines gives a more serene and thoughtful impression. These different

---

had plaintiff's image in her possession for a sufficient period of time to make these detailed changes.

In the alternative, plaintiff suggests that even if the copying was not intentional, there may have been "subconscious" copying, a la *Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F.Supp. 177 (S.D.N.Y.1976). However, in *Bright Tunes*, the two songs were essentially identical, whereas here, the two images are not identical.

"feels" are sufficient support for a finding that the two images are not substantially similar. *See Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir. 1982) (finding no substantial similarity where two snowmen toys which had many similar features common to snowmen had a "substantially different" total concept and feel). Even if Kunz did glimpse the image briefly and subconsciously took the "idea" of a punk with a skyline haircut, there can be no copyright infringement if she did not copy Kerr's expression of the idea. *See Durham Ind., Inc. v. Tomy Corp.*, 630 F.2d 905, 912 (2d Cir.1980) (A "general impression of similarity is not sufficient to make out a case of infringement. The only similarity of significance in assessing claims of infringement is similarity of expression.") Thus, defendants are entitled to summary judgment because there is not "substantial similarity" between the images as a matter of law.

### Lanham Act Claim

▋ The Complaint also states a cause of action for false designation of origin under the Lanham Act, claiming that defendants' false designation of origin [e.g. Kunz for Kerr] had "a negative effect on Kerr's reputation as an illustrator" and damages the effectiveness of the image as a service mark for Kerr. Plaintiff explains that this claim is for "reverse passing-off," which has four elements: 1) work at issue originated with the plaintiff; 2) origin of the work was falsely designated by defendant; 3) that false designation of origin was likely to cause consumer confusion; and 4) that plaintiff was harmed by the defendant's false designation of origin. *See Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir.1995). Plaintiff further contends defendants misappropriated his artistic talent, which he claims is a distinct cause of action, and maintains that he was actually damaged.

▋ The gravamen of plaintiff's Lanham Act is that defendants have falsely claimed ownership of plaintiff's copyrighted work. Thus, the claim must fail because "as a matter of law, a false copyright notice alone cannot constitute a false designation of origin." *Lipton*, 71 F.3d at 473. Moreover, the standard of comparison for a claim of "passing off" is the same "substantial similarity" standard used to show copyright infringement. *See Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 783 (2d Cir.1994). Plaintiff has failed to prove substantial similarity in the copyright context, so his Lanham Act claim, examined using the same standards, must also fail. *See Arden v. Columbia Pictures, Ind., Inc.*, 908 F.Supp. 1248, 1264 (S.D.N.Y.1995) (no Lanham Act claim where book and screenplay were not "substantially similar" in the copyright context); *Cox v. Abrams*, No. 93 Civ. 6899, 1997 WL 251532 (S.D.N.Y. May 14, 1997) (same).

Therefore, defendants' motion for summary judgment on plaintiff's copyright and Lanham Act claims is GRANTED.

The foregoing is so ordered.

"New York Hairline"   Thomas Kerr

July 10, 1995

THE NEW YORKER

Price $2.50