Robert W. CABELL, Plaintiff,

v.

SONY PICTURES ENTERTAINMENT, INC., et al., Defendants.

No. 09 Civ. 1610(WHP).

United States District Court, S.D. New York.

May 25, 2010.

Leo Kayser, III, Esq., Kayser & Redfern, LLP, New York, NY, for Plaintiff.

Joseph M. Beck, Esq., Kilpatrick Stockton, LLP, Atlanta, GA, for Defendants.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY, III, District Judge:

Plaintiff Robert W. Cabell ("Cabell") brings this action for copyright infringement and unfair competition against Sony Pictures Entertainment, Inc. ("Sony"), Columbia Pictures Industries, Inc. ("Columbia"), Pulse Advertising, Inc. ("Pulse"), Happy Madison, Inc. ("HM"), Adam Sandler ("Sandler"), Robert Smigel ("Smigel"), and Judd Apatow ("Apatow" and, collectively, "Defendants"). Cabell claims that the film *You Don't Mess With the Zohan* and its marketing materials infringed copyrights in works featuring Jayms Blonde ("Blonde"), a character created by Cabell. Defendants move for summary judgment dismissing all of Cabell's claims. For the following reasons, Defendants' motion for summary judgment is granted and this action is dismissed.

## BACKGROUND

### I. The Jayms Blonde Works

Cabell is the creator of several works (collectively, the "Blonde Works") featuring the exploits of a gay former U.S. Navy SEAL who divides his time between work as a hairdresser and service as a secret agent. (Defendants' Statement of Undisputed Material Facts In Support of Their Motion for Summary Judgment dated Jan. 15, 2010 ("Defs. 56.1 Stmt.") ¶¶ 1–2.) The Blonde Works chronicle Blonde's battle against an evil organization known as Zealous Environmental Nazis Ruthlessly Obliterating Nature ("ZENRON"). The Blonde Works are light in tone and replete with humor based on gay double-entendre. (Defs. 56.1 Stmt. ¶¶ 1–2.)

The cover of Cabell's novel, *The Hair–Raising Adventures of Jayms Blonde: Project Popcorn,* features a live model with blonde hair and arms outstretched, holding a gold-colored blow dryer in both hands in the manner of a handgun. (*See* Declaration of Robert Potter dated Jan. 15, 2010 ("Potter Decl.") Ex. B: Cover of *The Hair–Raising Adventures of Jayms Blonde; see also* Appendix 1.) The novel explains that Blonde's blow dryer is actually a "mini Uzi blow-dryer" which "passes through metal detectors because it's made completely of synthetic materials. The bullets are Teflon and come in regular, heat-seeking, and armor-piercing configurations." (Potter Decl. Ex. HH: *The Hair–Raising Adventures of Jayms Blonde: Project Popcorn* at 20.)

New Pride 2008 Front Book Cover

## Appendix 1

Similarly, Cabell's comic book includes drawings of Blonde wielding a blow dryer as a weapon in various poses and a variety of costumes. (*See* Potter Decl. Exs. A, D–H: Images from *The Hair–Raising Adventures of Jayms Blond: Defending the Planet from Bad Hair and Bad Air; see also* Appendix 2.) Defendants do not contest that Plaintiff has valid registered copyrights in these images and in the Blonde character. (Defs. 56.1 Stmt. ¶¶ 4–11.)

**Appendix 2**

II. *You Don't Mess With The Zohan*

*You Don't Mess With the Zohan* is a feature film released by Sony and Columbia in 2008, written by Sandler, Smigel and Apatow, and starring Sandler. (Defs. 56.1 Stmt. ¶¶ 12, 14.) It tells the story of Zohan, a former counter-terrorism agent for the Israeli Mossad, who fakes his own death to pursue a career as a hairdresser in America. (Defs. 56.1 Stmt. ¶ 13.) Along the way, Zohan falls in love with a Palestinian woman who employs him in her Queens, New York hair salon, prevents a ruthless real estate developer from displacing neighborhood residents, and works to ameliorate tensions among the Israeli and Arab residents of his neighborhood. (Defs. 56.1 Stmt. ¶ 13.)

Sony and Columbia marketed *You Don't Mess With the Zohan* with a series of promotional images designed by Pulse that featured Sandler, as Zohan, wielding a blow dryer in a variety of poses. (Defs. 56.1 Stmt. ¶ 20; Declaration of Deanna Mannheim dated Dec. 14, 2009 Exs. B–E: Promotional images for *You Don't Mess With the Zohan;* Appendix 3–6.)

Appendix 3

Appendix 4

Appendix 5

Appendix 6

## DISCUSSION

### I. *Summary Judgment Standard*

"Summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Davis v. Blige,* 505 F.3d 90, 97 (2d Cir. 2007). The burden of demonstrating the absence of any issue of material fact rests

with the moving party. *See Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 559 (2d Cir.1997). Materiality is determined by the governing substantive law, in this case the Copyright Act. *See Repp v. Webber,* 132 F.3d 882, 890 (2d Cir.1997).

■ In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jeffreys v. City of N.Y.,* 426 F.3d 549, 553 (2d Cir.2005). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau,* 524 F.3d 160, 163 (2d Cir.2008) (quoting *Guilbert v. Gardner,* 480 F.3d 140, 145 (2d Cir.2007)). Summary judgment on a copyright claim is appropriate if the works share only unprotectible ideas, or if no reasonable jury could find that the works are substantially similar. *See Kerr v. New Yorker Magazine, Inc.,* 63 F.Supp.2d 320, 323 (S.D.N.Y.1999) (citing *Arica Inst. v. Palmer,* 970 F.2d 1067, 1072 (2d Cir.1992)).

## II. *Copyright Claim*

■ To establish copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Defendants do not dispute that Cabell has valid copyrights in the Blonde Works. Therefore, Cabell need only satisfy the second element—that Defendants copied the Blonde Works—to prevail. In the absence of direct evidence, copying is proven by showing (1) that defendants had access to copyrighted works, and (2) "the substantial similarity of protectible material in the two works." *Williams v. Crichton,* 84 F.3d 581, 587 (2d Cir.1996). Defendants move for summary judgment on the grounds of lack of substantial similarity between the two works.

■ "[S]ubstantial similarity should be judged by the spontaneous response of the ordinary lay observer." *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 51 (2d Cir.1986) (internal citations omitted). Under this "ordinary observer" standard, a plaintiff must show "that substantial similarities as to the protected elements of the work would cause an average lay observer to recognize the alleged copy as having been appropriated from the copyrighted work." *Bill Diodato Photography, LLC v. Kate Spade, LLC,* 388 F.Supp.2d 382, 389 (S.D.N.Y.2005) (internal quotation marks and citations omitted); *see also Biosafe–One, Inc. v. Hawks,* 524 F.Supp.2d 452, 463 (S.D.N.Y.2007) ("The standard test for substantial similarity is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." (internal citations omitted)). Importantly, the analysis of similarities is limited to copyrightable material. "If the similarity concerns only noncopyrightable elements of plaintiff['s] work, or no reasonable trier of fact could find the works substantially similar, summary judgment is appropriate." *Williams,* 84 F.3d at 587; *see also Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 911–912 (2d Cir.1980).

■ Copyrightable material includes only the original expression of an idea, not the idea itself. *Williams,* 84 F.3d at 587 ("It is a principle fundamental to copyright law that a copyright does not protect an idea, but only the expression of an idea."); *see also Rice v. Fox Broad. Co.,* 330 F.3d 1170, 1177 (9th Cir.2003) ("As we have

stated before, general plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind."). Also unprotectable are *scenes a faire*, "elements of an image that flow naturally and necessarily from the choice of a given concept [and] cannot be claimed as original." *Bill Diodato Photography*, 388 F.Supp.2d at 392. Thus, to assess a claim of substantial similarity, a court "must decide whether the similarities shared by the works are something more than generalized ideas or themes." *Walker*, 784 F.2d at 48. "[T]he unprotectable elements of the image must be excluded from consideration." *Kerr v. The New Yorker Magazine, Inc.*, 63 F.Supp.2d 320, 325 (S.D.N.Y.1999) (citing *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 70 (2d Cir.1999)); 3 William F. Patry, Patry on Copyright § 9:137 (2008) ("Where the parties' works contain a significant amount of public domain material, the court of appeals ... requires that ... public domain trees be left out of the forest.").

## A. *Visual Depictions*

■ When analyzing whether an image has been infringed, a court must compare the protected image with the allegedly infringing image or images. *See, e.g., Bill Diodato Photography*, 388 F.Supp.2d at 392; *Kerr*, 63 F.Supp.2d at 325. However, Cabell has declined to specify which Jayms Blonde images were infringed. Instead, he asserts that all the Jayms Blonde images are "derivative of the seminal images of Jayms Blonde with the hair dryer pointed at the viewer." Thus, Cabell contends that any image depicting Jayms Blonde pointing a blow dryer at the viewer is infringed by any depiction of Zohan in a similar pose, regardless of any other features of their respective images.

■ Before undertaking a substantial similarity analysis, a court must separate ideas from expressions of ideas, because the former are not protected by copyright. *Williams*, 84 F.3d at 587. First, the concept of a blow dryer being wielded as a weapon is an idea and therefore unprotectable. *Williams*, 84 F.3d at 587. By itself, it simply cannot be the basis for a finding of substantial similarity. *See, e.g., Williams*, 84 F.3d at 587; *Bill Diodato Photography*, 388 F.Supp.2d at 392; *Kerr*, 63 F.Supp.2d at 325. Moreover, Cabell does not allege that the particular expression of that idea is substantially similar. The Blonde and Zohan images depict the blow dryers differently. Blonde holds a blow dryer that purports to be a "mini Uzi blow-dryer" with a black muzzle—a real weapon disguised as a blow dryer. In contrast, Zohan's blow dryer is just that, with glowing red heating elements visible in its muzzle.

■ Aside from the common idea of a blow dryer brandished as a weapon, Cabell argues that the Zohan images infringe his copyrights because Blonde and Zohan are depicted "with their bodies posed in a [similar] manner and their faces bear [ ] a demeanor ... suggest[ing] that these characters are secret agents of some kind." However, the Court of Appeals has held that a fighting pose is an unprotectable idea under copyright law. *See Mattel, Inc. v. Azrak–Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir.1983) (finding the stance of a plastic action figure unprotectable because, "[t]hough the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea").

■ Aside from the unprotectable ideas—the blow dryer as weapon and the "fighting" poses—the remaining similarities between the works are not substantial.

Apart from their aggressive stances, the poses of Blonde and Zohan are different. The model depicting Blonde on the cover of Cabell's novel stands with his right leg forward and his left leg behind, slightly bent at the knee. *See* App. 1. The cover of Cabell's comic book depicts Blonde squarely facing the viewer, with legs spread, arms outstretched and both hands clasping his mini Uzi blow-dryer aimed at the viewer head on. *See* App. 2.

Zohan assumes different poses. Two images depict Zohan from the chest up. *See* App. 3, 5. Another image shows Zohan looking down at the camera. *See* App. 6. In a fourth image, Zohan is depicted standing on one leg, with the other straight up in the air. *See* App. 4. Thus, Zohan's poses are not substantially similar to Blonde's. *See Kerr*, 63 F.Supp.2d at 325 (noting different poses in finding absence of substantial similarity).

The two characters' hair and clothing are also different. While both have stylized hair, Zohan's locks are dark brown and Blonde's are fittingly blonde. Their wardrobes are likewise dissimilar. Two images depict Zohan wearing a white t-shirt and cut-off jean shorts while other images show him wearing an open-collared, red-patterned shirt that reveals a Star–of–David medallion against his hirsute chest. Blonde appears in varied attire-ranging from a skintight purple body suit to black leather pants, a silver belt, and a black shirt with gold, red, green and blue patterns, unbuttoned to reveal a hairless stomach. None of the clothing worn by Blonde is substantially similar to Zohan's costumes.

Even the backgrounds of the Zohan and Blonde images contrast. For example, Zohan is depicted with blue sky and clouds in the background or bursting through posters, including one emblazoned with "Adam Sandler: You Don't Mess With The Zohan, Coming Soon." Cabell does not identify any Blonde image with a similar background. *See Kerr*, 63 F.Supp.2d at 325 (noting the difference in backgrounds in finding that two images were not substantially similar).

Taken together, the Zohan and Blonde images are not so similar that "an average lay observer would overlook any dissimilarities between the works and ... conclude that one was copied from the other." *Nihon*, 166 F.3d at 70; *see also* Patry on Copyright § 9:137–164.

Finally, Cabell's argument that Blonde is entitled to special protection as a comic book character is unavailing. While courts have found comic book characters are copyrightable, protection is limited to markedly similar characters. For example, in *Walt Disney Productions v. Air Pirates*, the Ninth Circuit found infringement where the defendant produced characters that were "marked[ly] similar [ ]" to Disney characters such as Mickey Mouse and bore the same names. 581 F.2d 751, 755 (9th Cir.1978). Likewise, in *Gaiman v. McFarlane*, while the Seventh Circuit determined that "Spawn," a comic book character, was copyrightable, it held that another copyrightable character "Medieval Spawn" was sufficiently differentiated from "Spawn" because it "talk[ed] medieval" and had a "knight's costume." 360 F.3d 644, 660 (7th Cir.2004).

Accordingly, Cabell has not identified sufficient similarities between the Blonde and Zohan characters to warrant a finding that Defendants infringed Cabell's copyrights. *Gaiman*, 360 F.3d at 660; *see also Sapon v. D.C. Comics*, No. 00 Civ. 8992(WHP), 2002 WL 485730, at *3 (S.D.N.Y. Mar. 29, 2002).

**B.** *Storyline*

 Cabell also alleges that the plotline in *You Don't Mess With the Zohan*

infringes the storylines in the Blonde Works. To the extent that the Blonde Works are similar to *You Don't Mess With the Zohan,* it is only to the extent that they share a common idea—a soldier leaving military service to become a hair dresser but continuing to use his military skills. Beyond that shared idea, the expressions are markedly distinct.

The Blonde stories involve a gay man who is discharged from the Navy SEALs under the "Don't Ask, Don't Tell" policy and pursues a career as a hairdresser while working enthusiastically as a secret agent. Blonde and his sidekick use specialized weapons, including an Uzi submachine gun disguised as a blow dryer, hot curler hand grenades, a laser beam teasing comb, and liquid nitrogen hair spray. In contrast, Zohan is a womanizing Israeli who fakes his own death so he can cease being a secret agent. Zohan wants to be a hairdresser so that he can make women's hair "silky smooth" and becomes successful by enthusiastically romancing his clientele of mature women. Zohan has no aspirations to be a secret agent, no sidekick, and no specialized weapons.

Moreover, the concept and feel of the Blonde Works are distinct from the Zohan film. The Jayms Blonde stories are parodies of the James Bond stories, and much of the humor is double entendre and innuendo. In contrast, *You Don't Mess With the Zohan* derives much of its humor by exaggerating Arab and Israeli stereotypes. For example, Israelis' purported affinity for humus is the subject of many sight gags throughout the film. While Zohan's sexuality is the subject of humor in *You Don't Mess With the Zohan,* the jokes play off his exuberant desire for the opposite sex. An average lay observer would not mistake Zohan's escapades with his elderly female clients for any of Blonde's amorous activities.

In short, to the extent there are similarities between the Blonde Works and *You Don't Mess With the Zohan,* they end with an unprotectable idea. *See, e.g., Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (2d Cir.1930) (finding that the abstract concepts of interfaith tensions between Jewish and Irish Catholic New Yorkers, and "loving and fertile couples," are not protectable elements.)

III. *New York State Law Unfair Competition Claim*

■■■ Finally, Cabell alleges that Defendants violated New York General Business Law § 368–b *et seq.* That law was repealed over a decade ago. Even if Cabell had asserted a similar claim under a valid statute, it would be preempted by federal copyright law. Under § 301 of the Copyright Act, a state law claim is preempted by federal copyright law where (1) "the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act"—the "subject matter" prong—and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law"—the "general scope" prong. *See Price v. Fox Entm't Group, Inc.,* 473 F.Supp.2d 446, 457 (S.D.N.Y.2007).

■■■ The subject matter prong is fulfilled because Cabell's state law claim, as articulated in the Amended Complaint, essentially recapitulates his federal claim that Defendants copied Jayms Blonde. This likewise satisfies the general scope prong because it involves "exclusive rights within the general scope of copyright as specified by section 106" and does not include any extra element that would make it qualitatively different from a copyright infringement claim. *See Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993) (New York unfair competition claims based

462

solely on the copying of the protected expression of another are preempted by Section 301 of the Copyright Act.) Accordingly, this Court grants summary judgment on Cabell's New York unfair competition claim.

*CONCLUSION*

For the forgoing reasons, Defendants' motion for summary judgment is granted and this action is dismissed. The Clerk of Court is directed to terminate all motions and mark this case as closed.

SO ORDERED.