SAXHOLM AS, and The Estate of Rolf Saxholm, Gunvor Saxholm, as Sole Heir, Plaintiffs,

v.

DYNAL, INC., and Dynal AS, Defendants.

No. CV–94–2409 (ARR).

United States District Court, E.D. New York.

Aug. 8, 1996.

Denise Pursley, Nixon, Hargrave, Devans & Doyle, L.L.P., Garden City, for Plaintiffs.

John Donofrio, Kirkland & Ellis, New York City, for Defendants.

## ORDER

ROSS, District Judge:

I have received the attached Report and Recommendation in the above-captioned matter from United States Magistrate Judge Pohorelsky, dated June 10, 1996. Having received no objections to Magistrate Judge Pohorelsky's report pursuant to 28 U.S.C. § 636(b)(1), and having conducted a *de novo* review of the record, I hereby adopt the Report and Recommendation as the opinion of the court. Accordingly, plaintiff's motion to amend the complaint is GRANTED, and defendants' application for sanctions is DENIED.

SO ORDERED.

## ORDER AND REPORT AND RECOMMENDATION

POHORELSKY, United States Magistrate Judge:

The plaintiffs, Saxholm AS and the Estate of Rolf Saxholm (collectively "Saxholm") have moved for leave to file an amended complaint which would add a new defendant, Dyno Particles, AS, ("Dyno") and would drop the Estate of Rolf Saxholm as a plaintiff. The defendants have cross-moved for sanctions against Saxholm in connection with the making of the motion. Both motions have been referred to this magistrate judge. For the reasons set forth below, the motion to amend the complaint is **GRANTED,** and it is my report and recommendation that Dynal's application for sanctions be **DENIED.**

1. The three patents are United States Letters Patent Numbers 4,992,377 (the '377 patent), 4,324,859 (the '859 patent), and 4,657,868 (the '868 patent). The declaratory relief sought by Saxholm includes a judgment declaring that the '377 patent is valid and enforceable, and that the '859 and '868 patents were valid and enforce-

## I. BACKGROUND

The plaintiffs commenced this action on May 20, 1994, asserting patent infringement claims against the defendants, Dynal, Inc., and Dynal AS (collectively "Dynal"). Specifically, the present complaint asserts claims against Dynal, Inc. for direct infringement of three United States patents owned by Saxholm, and claims against Dynal AS for inducing and contributing to Dynal, Inc.'s infringement of those patents. Saxholm seeks damages as well as declaratory and injunctive relief.[1]

The Saxholm patents concern biomagnetic separation products used in medical and biological laboratories in conducting tests on blood and other biological substances. The defendant Dynal AS, a Norwegian corporation, manufactures and distributes, worldwide, two biomagnetic separation products, "Dynabeads" and "Dynal MPC," which Saxholm contends infringe the Saxholm patents. The other defendant, Dynal, Inc., is a New York corporation. It is a wholly-owned subsidiary of Dynal AS and is the North American distributor of Dynabeads and Dynal MPC. Dyno Particles AS, whom the plaintiffs now seek to add as an additional defendant, is a Norwegian corporation that owns fifty percent of Dynal AS. It, too, manufactures biomagnetic separation products, called "Dynospheres," which Dynal AS purchases and resells as "Dynabeads."[2] Saxholm alleges that Dynal, Inc., has sold Dynabeads, Dynal MPC, and Dynospheres (as Dynabeads) to customers in the United States, including customers in New York.

The defendants oppose the addition of Dyno as a defendant on the grounds that they will be prejudiced by the delay and expense that the addition of Dyno would cause and that, in any event, the claims

able until the time of their expiration on February 12, 1991.

2. It is unclear from plaintiff's papers whether Dynabeads and Dynospheres are the same product marketed under different names or are two different products.

against Dynal are futile because they fail as a matter of law.[3]

## II. THE MOTION TO AMEND

■ Once a responsive pleading has been filed, plaintiff may amend the complaint only with leave of court. Fed.R.Civ.P. 15(a). The rule states that leave to amend should be granted freely, and amendment is typically permitted. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28 (2d Cir.1995). Futility of the amendment and undue delay on the part of the movant, however, are sufficient cause for denial of the application. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994); *Sterling v. Interlake Industries, Inc.*, 154 F.R.D. 579, 588 (E.D.N.Y.1994). Thus, if granting the motion would result in substantial prejudice to the non-movant, the application should be denied. *Foman*, 371 U.S. at 183, 83 S.Ct. at 230; *Interlake*, 154 F.R.D. at 588. Likewise, if the court concludes that the proposed amendments fail to state legally cognizable claims for relief, it is not an abuse of discretion for the district court to deny leave to amend. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131–32 (2d Cir.1993); *accord, Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990). The discussion below examines each of these concepts in turn.

### A. *Delay and Prejudice*

■ Although courts have recognized that prejudice tends to increase with delay, *see, e.g., Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155 (2d Cir.1968); *Select Creations, Inc. v. Paliafito America, Inc.*, 830 F.Supp. 1213, 1216 (D.C.Wis.1993), delay alone is seldom reason to deny a motion to amend. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir.1993); *Gay v. Petsock*, 917 F.2d 768, 773 (3d Cir.1990). The non-movant carries the burden of demonstrating that substantial prejudice would result were the proposed amendment to be granted. *Interlake*, 154

F.R.D. at 589, *citing Panzella v. Skou*, 471 F.Supp. 303, 305 (S.D.N.Y.1979). Any prejudice which the non-movant demonstrates must be balanced against the court's interest in litigating all claims in a single action and any prejudice to the movant which would result from a denial of the motion. *Bertrand v. Sava*, 535 F.Supp. 1020, 1026 (S.D.N.Y. 1982), *rev'd on other grounds*, 684 F.2d 204 (2d Cir.1982); *Henderson v. U.S. Fidelity & Guar. Co.*, 620 F.2d 530, 534 (5th Cir.1980), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1981).

■ Here, although Saxholm's application comes late in the day, it is unlikely to have any substantial impact in delaying the final disposition of this case. This matter has been stayed pending a re-examination, by the United States Patent Office, of the '377 patent. As all parties have conceded, the re-examination process is crucial to the resolution of this action,[4] and such re-examinations are typically lengthy, sometimes taking as many as four years to complete. The re-examination being conducted here has not yet been pending for even a year. Although fact discovery has been completed (at least as to the present parties) and the parties have thus advanced this case some way toward resolution, it is not yet on the "eve" of disposition. In fact, in light of the re-examination proceeding, the joinder of Dyno may not delay resolution of this matter for any period of time. Some discovery regarding Dyno has already occurred, and to the extent some additional fact discovery is necessary regarding the claims against Dyno, that discovery can be conducted now while the re-examination process is pending. Although the additional discovery might result in some duplication of discovery effort, and thus cause Dynal to bear some expenses it would not otherwise have encountered, the court can alleviate such prejudice by limiting discovery or requiring Saxholm to reimburse

---

3. The defendants do not oppose that part of the plaintiffs' motion concerning the dismissal of the Estate of Rolf Saxholm as a party-plaintiff, and the court therefore grants that application without further discussion.

4. While only one of the three patents-in-suit is the subject of re-examination, the '377 is the only one which has not expired. Consequently, it is the only patent-in-suit which provides a basis for injunctive relief and future lost earnings.

Dynal for such expenses. *See, e.g.,* Fed. R.Civ.P. 26(b)(2), (c); Local Civil Rule 15.

This case is thus different from *H.L. Hayden Co. v. Siemens Medical Systems, Inc.,* 112 F.R.D. 417 (S.D.N.Y.1986), cited by the defendants, in which the court denied an application to amend the complaint to add an additional party on the basis of undue delay. One of the most important factors in that court's calculus was the degree to which the proposed amendment "would delay the final disposition of the action." *Id.* at 419. There, because discovery was completed and dispositive motions from all of the parties were already *sub judice,* the court estimated that joinder of an additional defendant would put off the final disposition of that matter for at least an additional six months. *Id.* at 420. That is not the situation here.

Moreover, weighed against the concerns raised by Dynal is the court's not insubstantial interest in adjudicating the entire dispute in one action. As the court in *Hayden* recognized, an important factor for the court to consider when deciding a motion for leave to amend is whether denying leave is likely to lead to the initiation of a second action which encompasses substantially the same factual and legal questions as the initial proceeding. *Id.* at 421. Here, since Saxholm has indicated its intention to initiate a second action if leave to amend be denied, and since such an action would involve most of the exact same facts, circumstances, and questions of law as this action, denying leave to amend would simply multiply proceedings in this court with no apparent benefit to the parties.

Given the absence of any appreciable delay or any other hardship which cannot be alleviated by appropriate discovery orders, the defendants have not demonstrated sufficient prejudice to justify denial of the plaintiffs' motion.

### B. *Futility*

■ Dynal also argues that, because the proposed claims fail as a matter of law, it would be futile to permit the amendment. Although leave to amend should not be granted in such circumstances, *Foman,* 371 U.S. at 182, 83 S.Ct. at 230, a proposed claim is futile only if it is clearly frivolous or legally insufficient on its face. *Sterling,* 154 F.R.D. at 589. If the proposed claim sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny the amendment. *Allstate Ins. v. Administratia Asigurarilor De Stat,* 875 F.Supp. 1022, 1029 (S.D.N.Y.1995); *see also, Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief).

Dynal's argument that the proposed claims against Dyno are futile rests on their assertion that the court lacks personal jurisdiction over Dyno. Dynal contends that Dyno's contacts with New York are insufficient, both under constitutional due process principles and under New York's "long arm" statute, to permit the court to exercise jurisdiction over it.

### 1. *Due Process*

■ The Due Process Clause of the United States Constitution circumscribes the reach of the court's *in personam* jurisdiction. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Due process requires that a defendant have purposeful "minimum contacts" with the forum state before jurisdiction attaches. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). These contacts need not include the physical presence of the defendant in the forum state, but may arise where the defendant, outside of the forum state, takes some action which is purposefully directed at that state. *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987). This includes placing manufactured goods in the "stream of commerce" where the defendants have good reason to know the likely destination of the product. *Id.; World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The precise parameters of the "stream of commerce" theory are still a topic of much discussion among the federal circuit courts of appeal. *See, e.g., Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1544–48 & n. 17

(11th Cir.1993) (collecting cases). The courts appear to agree, however, that where a manufacturer places a product into the forum state via an established distribution chain, specific jurisdiction, such as is alleged here, is proper. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565–68 (Fed. Cir.1994), (*citing Burger King*, 471 U.S. at 472–73, 105 S.Ct. at 2182; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75, 104 S.Ct. 1473, 1478–79, 79 L.Ed.2d 790 (1984)).[5]

▮ In this case, Saxholm contends that Dyno created Dynal AS specifically to market and sell its Dynospheres. Dynal AS, as an exclusive distributor, markets Dyno's biomagnetic materials throughout the world through a number of wholly-owned subsidiaries, including Dynal, Inc. Dyno's substantial ownership interest in Dynal AS coupled with the presence of a shared director and officer, Hakon Haugen, lend substantial credibility to Saxholm's argument that Dyno was or should have been well aware that the eventual destination of their products included the United States and specifically the State of New York.

Saxholm has also submitted documentary evidence that Dyno Particles has had direct contact with two companies located in the United States, at least one of which is in New York. Specifically, in a letter from Dynal AS to an entity listed as "Fisher Scientific," in Orangeburg, New York, Dynal AS advises Fisher that its request for information concerning Dynospheres had been forwarded to Dyno Particles, in Lillestrom, Norway. Dynal AS further asserted that Dyno Particles would contact Fisher directly at some time in the future. A second letter, from a corporation located in Maryland, which is addressed to Hakon Haugen at Dyno Particles, appears to be a proposed distribution agreement between Dyno and the Maryland corporation. These communications tend to establish that Dyno Particles had purposeful contacts with entities in the United States for the purpose of distributing its products here.

In view of the allegations and evidence that Dyno Particles has placed its products into a stream of commerce through an established distribution channel that it owns in substantial part, and has had other purposeful contacts with the United States and the forum state, the situation here appears quite similar to that presented in *Beverly Hills, supra.* The court therefore cannot at this stage of the proceedings hold that jurisdiction over Dyno will necessarily be defeated for lack of sufficient contacts with the forum under constitutional principles of due process.

### 2. *New York's Long Arm Statute*

▮ Federal courts deciding federal question cases must look not only to the due process clause, but also to relevant state law when determining whether personal jurisdiction over a non-domiciliary is proper. *United States v. First Nat'l City Bank*, 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Hubbell v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 961 (S.D.N.Y.1995); *Beverly Hills*, 21 F.3d at 1569; *see also* Fed.R.Civ.P. 4(e)–(f). As New York's statute does not extend to the limits of due process, *see Interface Biomedical Laboratories v. Axiom Medical*, 600 F.Supp. 731, 735 n. 3 (E.D.N.Y. 1985), a separate analysis is necessary. Saxholm urges that sections 302(a)(2) and 302(a)(3) of New York's Civil Practice Law and Rules ("CPLR") each provide a jurisdic-

---

5. Dynal's counsel has argued that the court in *Beverly Hills* relied on a factual assumption that the defendants in that case "actually *did* ship products into the forum state." Def.Mem.Opp. at 20 (emphasis in original). A closer reading of the case discloses the error in that argument. *See* 21 F.3d at 1563 n. 11 ("It is undisputed that Ultec [the defendant] does not make direct shipments anywhere within the United States.") The page to which Dynal cites for support of its position contains the following passage "The allegations are that defendants purposefully shipped the accused fan into Virginia *through an* established distribution channel." *Id.* at 1565 (emphasis added). Here, Saxholm has made almost identical assertions, *i.e.*, that Dyno, through an established distribution channel, namely Dynal AS and Dynal, Inc., purposefully directed shipments of infringing products into New York. In view of Dynal's counsel's own lack of care in reading *Beverly Hills*, their characterization of Saxholm's argument as "disingenuous misinterpretation" of the applicable caselaw, Def. Mem.Opp. at 22, brings to mind the familiar axiom about stone-throwing and glass houses.

tional basis for this action in New York. Those sections are examined below.

Section 302(a)(2) provides for personal jurisdiction over a non-domiciliary who commits a tort within the State if the claim for relief arises out of that act. Saxholm argues that Dyno's sales to Dynal, which occurred in Norway, contributed to or induced acts of direct infringement committed by Dynal in New York. The question whether an out-of-state act that contributes to or induces patent infringement within the state may be considered a "tort within the state" for purpose of 302(a)(2) is one which appears not to have been addressed in any published opinion. In the parallel field of trademark law, however, out-of-state acts that contribute to or induce trademark infringement in New York have been held sufficient to exercise jurisdiction over the out-of-state actor under section 302(a)(2). *See, e.g., G.H. Bass & Co. v. Wakefern Food Corp.*, 21 U.S.P.Q.2d 1862, 1864–65, 1991 WL 285622 (S.D.N.Y.1991). And similarly worded long arm statutes from other jurisdictions have been interpreted to permit courts to exercise jurisdiction over non-domiciliaries charged with contributory patent infringement. *See, e.g., Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1144 (7th Cir.1975) (applying Illinois law); *Kearns v. Wood Motors, Inc.*, 204 U.S.P.Q. 485, 488–90, 1978 WL 21460 (E.D.Mich.1978) (Michigan law); *Gor–Vue Corp. v. Hornell Elektrooptik AB*, 634 F.Supp. 535, 537–38 (N.D.Ohio 1986) (Ohio law). In view of these holdings and the absence of contrary authority, section 302(a)(2) is likely to be interpreted broadly enough to provide for jurisdiction over Dyno in New York on the facts alleged in this case.

Section 302(a)(3) potentially provides an additional basis for jurisdiction in New York. In relevant part, that section states that jurisdiction is proper where a defendant,

> commits a tortious act without the state causing injury to person or property within the state [and]
>
> (i) . . .
>
> (ii) expects or should reasonably expect the act to have consequences in the state

and derives substantial revenue from interstate or international commerce. N.Y.Civ.Prac.L. & R. 302(a)(3).

Dynal challenges jurisdiction under this section on the ground that Dyno's out-of-state acts caused no "direct injury" in New York. Jurisdiction under section 302(a)(3) requires that the injury "be direct, and not remote or consequential." *Interface Biomedical*, 600 F.Supp. at 738. Although Saxholm has been unable to point to any specific authority for the proposition that jurisdiction is proper under this section on the facts alleged here, courts directly addressing the injury issue have held that conduct outside the state which causes the loss of business or customers in New York causes injury within the state sufficient for the purposes of establishing jurisdiction under section 302(a)(3). *See, e.g., In re Houbigant, Inc.*, 914 F.Supp. 964, 979 (S.D.N.Y.1995), *citing Sybron v. Wetzel*, 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978). Since Saxholm's amended complaint alleges that sales of Dyno's products have occurred in the state of New York, given the above authorities it is simply too early, at this stage of the litigation, to say with any certainty that Saxholm will be unable to establish jurisdiction under section 302(a)(3).

*Art Leather Mfg. Co. v. Albumx Corp.*, 888 F.Supp. 565 (S.D.N.Y.1995), cited by Dynal, does not suggest otherwise. Although the court there determined that jurisdiction could not be asserted under section 302(a)(3), the court's decision did not rest on the plaintiff's failure to establish direct injury in New York. Indeed, the court presumed direct injury where the defendant's allegedly infringing products were sold in New York. *See id.* at 567–68. Rather, the decision turned on the court's finding that the defendant's actions were not the "proximate cause" of that injury in New York. *Id.* at 568. In *Art Leather*, the manufacturer of the infringing product sold the product outside of New York to a distributor. The distributor then sold the accused product in New York. The court held that because the manufacturer had "no economic concern" as to the final destination of the infringing product once it had been sold to the distributor,

the manufacturer had no reason to believe that sales to customers in New York were any more likely than sales elsewhere, and hence, the original out-of-state sale was not the proximate cause of the resale in New York. *Id.*

The case here stands on different footing. Here, Dyno has a much closer and more substantial relationship with the distribution channel that led to sales of its products in New York. It has a substantial ownership stake in, and shares an officer/director with, its distributor, Dynal AS. Dynal AS in turn markets Dyno's products through a wholly-owned subsidiary, Dynal, Inc., which is responsible for North American distribution, including sales in New York. Dyno is thus in a far better position to know the eventual destination of its allegedly infringing products than was the defendant in *Art Leather,* and its actions are therefore more likely to be considered the proximate cause of any injuries that may have been caused in New York.

Under these circumstances, the court cannot say that it would be futile to permit amendment of the complaint so as to assert claims against Dyno.[6] *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985) (On a motion to dismiss, plaintiff need only make a prima facie showing of jurisdiction); *Editorial Musical Latino Americana, S.A. v. Mar International Records, Inc.,* 829 F.Supp. 62, 64 (S.D.N.Y.1993) (On a motion to dismiss all inferences and ambiguities are to be resolved in favor of the pleader).

### III.   THE MOTION FOR SANCTIONS

■ Dynal has moved for sanctions against Saxholm pursuant to Title 28, United States Code, section 1927 in connection with the filing of this motion. Saxholm has admitted that it violated Rule 3 of Civil Rules of the Southern and Eastern Districts of New York by failing to file the motion with the court on the return date and Rule 4 of Judge

Ross's rules regarding motion practice by failing to provide the court with a cover letter. Saxholm explains that they failed to file the motion in a timely fashion due to a scheduling error and they failed to provide Judge Ross with a cover letter because they had not yet appeared before her. These explanations are indicative of inadvertent, negligent error. The court finds no evidence that Saxholm's conduct, however inexcusable, was the result of bad faith or an attempt to delay or disrupt these proceedings. *See United States v. Int'l Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991). Nor does the court find any basis for determining that the plaintiffs' omissions caused the defendants to incur any expenses other than those incurred to oppose the motion to amend. Accordingly, it is my report and recommendation that Dynal's application for sanctions be denied.

### IV.   CONCLUSION

For the above stated reasons, the plaintiffs' motion for leave to serve and file an amended complaint is **GRANTED,** and I report and recommend that the defendants' application for sanctions be **DENIED.**

\*     \*     \*     \*     \*     \*

Any objections to that portion of this decision which is a Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.) *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Serv.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

Dated: Uniondale, New York,
June 10, 1996

---

**6.** This decision is *not* a finding that the court has personal jurisdiction over Dyno. Rather, it is limited to the narrow issue of whether or not it is clear from the face of the proposed complaint that jurisdiction is patently improper. It is quite possible that these claims may ultimately be dismissed for lack of jurisdiction. That determination, however, is beyond the scope of the instant application.

SO ORDERED, REPORTED AND REC-OMMENDED.