**BLUE RIBBON PET PRODUCTS, INC., Plaintiff,**

v.

**ROLF C. HAGEN (USA) CORP. and Rolf C. Hagen (Canada) Inc., Defendants.**

No. CV 97–1395.

United States District Court, E.D. New York.

Sept. 17, 1999.

Galgano & Burke, by Daniel P. Burke and Thomas M. Galgano, Hauppauge, NY, for Plaintiff.

Wolf, Greenfield & Sacks, P.C. by James J. Foster, Boston, MA, Wortman, Fumuso, Kelly DeVerna & Snyder, by Scott G. Christensen, Hauppauge, NY, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WEXLER, District Judge.

Plaintiff Blue Ribbon Pet Products, Inc. ("Blue Ribbon") brings this action against defendants Rolf C. Hagen (USA) Corp. ("Hagen USA") and Rolf C. Hagen (Canada) Inc. ("Hagen Canada") asserting claims for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and for unfair competition under state law. The action was tried before this Court on November 17, 1998. The following are the Court's findings of fact and conclusions of law.

### FINDINGS OF FACT

Blue Ribbon is a family-owned and controlled business, located in Commack, New York, that develops and supplies pet products, including aquarium ornaments. Blue Ribbon is owned by Alan Cohen ("Cohen")—its president—and his wife.

Hagen Canada is a Canadian corporation that also develops and supplies pet products, including aquarium ornaments. Hagen Canada is one of the largest suppliers of pet products in Canada.

Hagen USA is located in Mansfield, Massachusetts and supplies pet products throughout the United States, including New York. Hagen USA is a subsidiary of Hagen Canada.

There are also several companies in Europe under the "Hagen" name, including one located in Germany, Hagen Deutsch-

land GmbH ("Hagen Germany") Hagen Germany is also a subsidiary of Hagen Canada.

Beginning in 1993, Blue Ribbon began marketing a line of aquarium ornaments under the trademark "Exotic Environments." Since then, Blue Ribbon filed seven United States copyright registrations (the validity and ownership of which are not in issue) relating to its Exotic Environments ornaments—four registrations of black-and-white sketches of ornaments (identified as Exhibits 1 through 4) and three later filed registrations of actual three-dimensional ornaments based on the copyrighted sketches (identified as Exhibits 57 through 59)—as follows:

| | Registration No. | Registration Date | Nature of Work |
| --- | --- | --- | --- |
| Exh. 1 | VAu 313–557 | October 3, 1994 | Sketches (of tree trunks and roots, human skulls, toxic waste barrels, sunken WWII plane, sunken treasure chests, anchor on coral rock, volcano, and cargo vessel) |
| Exh. 2 | VAu 299–831 | June 20, 1994 | Sketches (of lighthouses) |
| Exh. 3 | VAu 362–272 | August 30, 1995 | Sketches (of coral reefs) |
| Exh. 4 | VAu 340–506 | July 11, 1995 | Sketches (of sunken ships, tugboats, and galleons) |
| Exh. 57 | VAu 843–510 | March 24, 1997 | 3–D Sculptures (of "Sunken Treasures") |
| Exh. 58 | VAu 843–514 | March 24, 1997 | 3–D Sculptures (of "REEFlections") |
| Exh. 59 | VAu 843–511 | March 24, 1997 | 3–D Sculptures (of "Shipwrecks") |

In October 1995, Cohen contacted Rolf Hagen at Hagen Canada to have Hagen Canada distribute Blue Ribbon's Exotic Environments ornaments in Canada. Rolf Hagen is the president of both Hagen Canada and Hagen USA. Although the parties compete in the United States, Cohen decided that an arrangement with Hagen Canada was the best way for Blue Ribbon to expand into the Canadian market. Cohen sent catalog sheets for the Exotic Environments ornaments to Rolf Hagen and, in correspondence, informed Rolf Hagen that the ornaments' designs were copyrighted. In an October 25, 1995 letter to Cohen, Rolf Hagen responded favorably to an arrangement with Blue Ribbon and indicated that his brother, Horst Hagen, was responsible for purchasing and would be contacting Cohen. Horst Hagen was responsible for purchasing and new product selection for both Hagen Canada and Hagen USA.

In early November 1995, Cohen sent a price list for Exotic Environments ornaments to Horst Hagen. Cohen also sent additional catalog sheets and samples of Blue Ribbon's Exotic Environments ornaments to Horst Hagen's assistant at Hagen Canada, Peter Thon. Cohen testified that he also spoke to Horst Hagen personally and informed him that the Exotic Environments ornaments were "copyright protected."

Later in November 1995, Hagen Canada began purchasing Blue Ribbon's Exotic Environments ornaments. These purchases were made at significant discounts to Hagen Canada to encourage business between the parties. Hagen Canada continued to purchase Blue Ribbon's Exotic Environments ornaments into 1996. Hagen Canada purchased approximately 15,000 ornaments overall, for a total of about $70,000, from Blue Ribbon.

The Exotic Environments ornaments Blue Ribbon sold to Hagen Canada, and the samples initially sent to Hagen Canada, had copyright notices molded into them and on their hang tags and boxes.

Meanwhile, during 1996, Hagen Canada ordered the allegedly infringing ornaments at issue in this action from a Japanese supplier, identified only as "Mr. Miyazaki," after negotiations between Horst Hagen and Charles Jaschke, also of Hagen Canada, and Miyazaki. Many of those ornaments closely resembled Blue Ribbon's Exotic Environments ornaments in color, shape, layout, and overall appearance, differing principally in that they were scaled for use in smaller aquariums.

Hagen Canada marketed these ornaments under its "Relics" line. The Relics line consists of 24 different ornaments, sold in "blister packs" on "display cards." A "blister pack" is a clear plastic pack in which the ornaments are seated. A "display card" is a small sheet of cardboard, containing marketing and sales-related matter, which slips into a slot on the pack and acts as a backing and seal to the pack. Each pack contains two different ornaments. Thus, the entire Relics line consists of 12 different packs, each containing two different ornaments.

Of the 24 different Relics ornament (contained in the 12 different packs), Blue Ribbon claims that 12 different ornaments infringe its copyrights. These 12 ornaments are contained in seven of the 12 different packs. In other words, the seven packs at issue contain 14 ornaments, only 12 of which are alleged to infringe Blue Ribbon's copyrights.

To support sales of the Relics ornaments, Hagen Canada produced catalog sheets for the Relics ornaments. Hagen Canada produced, in Canada, 11,000 catalog sheets for the Relics ornaments. Each catalog sheet contains photographs of the Relics ornaments. By June 1998, Hagen Canada had sent 5,500 catalog sheets to Hagen USA for distribution in the United States.

Hagen Canada also produced, in Canada, 75,640 products catalogs for Hagen's products. Each products catalog was 134 pages and included the Relics catalog sheets and numerous other products. By June 1998, Hagen Canada had sent 50,000 products catalogs to Hagen USA for distribution in the United States.

Hagen USA distributed the catalog sheets and products catalogs (containing the Relics catalog sheets) throughout the United States, including New York.

Hagen Canada did artwork for a display card for the packs. Each card contained the "Relics" logo and photographs of aquarium pets on one side and a listing of the related Hagen companies, including Hagen Canada and Hagen USA, identified as distributors of the product, on the other side.

Of the ornaments Hagen Canada ordered from the Japanese supplier, 117,600 packs contained allegedly infringing ornaments. Of these 117,600 packs, 48,384 were sent to Hagen USA. The record is unclear whether the 48,384 packs that were sent to Hagen USA were sent by Hagen Canada or were sent directly from the supplier. In any event, Hagen Canada ordered these Relics ornaments and procured the display cards for Hagen USA, for Hagen USA's distribution in the United States.

Hagen Canada sold the Relics line in Canada, and Hagen USA sold the Relics line in the United States. In 1996, Blue Ribbon learned through a local retailer that a local distributor, Royal Pet Supplies, was distributing Relics ornaments in the Eastern District of New York.

Blue Ribbon commenced this action on March 24, 1997. Blue Ribbon's initial complaint named only Hagen USA as a defendant. Subsequently, Blue Ribbon amended its complaint to add Hagen Canada as a defendant.

Hagen USA admits that in December 1997 it sold and shipped some of its Relics

ornaments to Hagen Germany. Hagen USA's invoice of this sale indicates that Hagen USA sold 576 of each of the 12 allegedly infringing Relics ornaments to Hagen Germany.[1] Robert Baskinger ("Baskinger"), executive vice-president and general manager of Hagen USA, testified that this sale was made without consulting Hagen USA's attorneys, but that Hagen USA has otherwise stopped it sales of Relics ornaments. There was no testimony or other evidence concerning Hagen Germany's disposition, if any, of those ornaments.

In addition, Hagen USA continued to distribute the Relics catalog sheets and the products catalogs containing the Relics ornaments catalog sheets in the United States after the action was brought. Hagen USA has not sought to recall the Relics catalog sheets, its products catalogs, or the Relics ornaments distributed in the United States or to notify those to whom it distributed these items of the alleged infringement.

Cohen testified that Blue Ribbon suffered nearly $450,000 in lost profits on the allegedly infringing ornaments in the 117,600 packs ordered by Hagen Canada from the Japanese supplier. Cohen maintained that Blue Ribbon's lost profit was $2.20 per infringing ornament, based on the profit per ornament from its earlier sale of the 15,000 Exotics Environments ornaments to Hagen Canada. Under Cohen's computation, there were 202,272 infringing ornaments (12 out of every 14 ornaments, i.e. 86%, of the 235,200 ornaments in the 117,600 packs).

On the other hand, Baskinger maintained that Hagen USA sold a total of only 16,968 "cards" of Relics ornaments (of the 48,384 sent to it), yielding "net sales" of $44,307, and that the remaining ornaments—apparently, other than those sold and shipped to Hagen Germany—are sitting in inventory in Hagen USA's warehouse. None of the parties presented evidence on Hagen Canada's sales or profits in Canada. Moreover, none of the parties offered testimony of Rolf Hagen or Horst Hagen.

Blue Ribbon asserts claims for infringement under the Copyright Act, seeking statutory damages, a permanent injunction, and attorney's fees and costs, and for unfair competition under New York law, seeking punitive damages.

### DISCUSSION AND CONCLUSIONS OF LAW

#### A. Personal Jurisdiction Over Hagen Canada

As for Blue Ribbon's claims against Hagen Canada, Hagen Canada asserts that it is not subject to personal jurisdiction in this Court and, in any event, that it did not infringe Blue Ribbon's United States copyrights because all acts it committed occurred outside the United States. Regarding personal jurisdiction, as Hagen Canada argues, Blue Ribbon bears the burden of proving this Court's jurisdiction over Hagen Canada by the preponderance of the evidence. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981). Because there is no specific federal statute governing personal jurisdiction on a copyright claim, this Court must look to the provisions of state law, namely, New York's Civil Practice Law & Rules ("CPLR") §§ 301, 302. *See* Fed.R.Civ.P. 4(e); *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.,* 869 F.2d 34, 40 (2d Cir. 1989); *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.,* 829 F.Supp. 62, 64 (S.D.N.Y.1993). Nevertheless, this Court's exercise of jurisdiction under either of these provisions must comport with the Due Process Clause of the United States Constitution. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945);

---

**1.** Inexplicably, the Hagen USA invoice evidencing this sale to Hagen Germany indicates a sale date of July 21, 1997.

*Saxholm AS v. Dynal, Inc.*, 938 F.Supp. 120, 124–25 (E.D.N.Y.1996).

A review of the record demonstrates that Blue Ribbon proved by a preponderance of the evidence that Hagen Canada is subject to personal jurisdiction in this action under CPLR § 302(a)(2). Under CPLR § 302(a)(2), this Court may exercise personal jurisdiction over an out-of-state defendant who "commits a tortious act within the state." On a copyright infringement claim, it is well established that merely offering one copy of an offending work for sale in New York, even if no sale is consummated, constitutes tortious conduct sufficient for long-arm jurisdiction under CPLR § 302(a)(2). *Cordon Holding B.V. v. Northwest Pub. Corp.*, 1998 WL 867388, at *2 (S.D.N.Y. Dec.14, 1998); *Editorial Musical Latino Americana, S.A.*, 829 F.Supp. at 64–65. The evidence established that Hagen Canada contributed to or induced Hagen USA's distribution of the Relics catalog sheets, its products catalogs containing the Relics catalog sheets, and the Relics ornaments throughout the United States, including New York, by producing and sending the Relics catalog sheets and products catalogs to Hagen USA, ordering the Relics ornaments from the Japanese supplier, and preparing the artwork for and procuring the display cards for the ornaments. Hagen Canada's out-of-state acts contributed to or induced Hagen USA's infringement (as discussed below) within New York and are sufficient to subject it to personal jurisdiction in New York.[2] *Cf. Saxholm AS*, 938 F.Supp. at 126 (on motion to amend complaint, holding personal jurisdiction in New York on contributory patent infringement claims properly asserted over foreign manufacturer of allegedly infringing products who

had substantial ownership of, and shared director and officer with, foreign distributor that acted as its exclusive distributor marketing throughout world including through wholly-owned subsidiary in New York, and who had communications with companies in United States, including one in New York, for purpose of distributing its products in United States); *G.H. Bass & Co. v. Wakefern Food Corp.*, 21 U.S.P.Q.2d 1862, 1864–65, 1991 WL 285622 (S.D.N.Y.1991) (on motion to dismiss, holding personal jurisdiction in New York on contributory trademark infringement claim properly asserted over New Jersey resident who, as president and owner of a New Jersey corporation which distributed footwear and other merchandise, knew that allegedly infringing sneakers would be distributed for sale in New York by another New Jersey corporation, and who, over course of years, had sold other merchandise which he knew was distributed for sale in New York by that other New Jersey corporation); *Levi Strauss & Co. v. Textiles Y Confecciones Europeas, S.A.*, 222 U.S.P.Q. 971, 972–74, 1983 WL 51863 (S.D.N.Y.1983) (on motion to dismiss, holding personal jurisdiction in New York on contributory trademark infringement claim properly asserted over foreign manufacturer who made accused goods abroad and sold them to New York affiliated distributor through purchase orders made and accepted abroad, and who produced distributor's advertising and promotional materials and received distributor's financial reports and marketing plans). The same basis for personal jurisdiction exists over Blue Ribbon's unfair competition claim, as the same conduct allegedly underlies both claims.

---

**2.** Although Blue Ribbon's amended complaint does not explicitly state a claim for contributory infringement, as opposed to direct infringement, against Hagen Canada, given the evidence of contributory infringement at trial, the pleadings are deemed amended to assert such a claim. *See* Fed.R.Civ.P. 15(b) (providing, in relevant part: "When issues not raised by the pleadings are tried by express or im-

plied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.").

Traditional notions of fair play and substantial justice are not offended by the exercise of jurisdiction in New York over Hagen Canada. Hagen Canada knew or should have known that the Relics catalog sheets, products catalogs, and Relics ornaments would be distributed by Hagen USA in New York. This conclusion is clear given that Hagen Canada produced the Relics catalog sheets and the products catalogs and procured the Relics ornaments for Hagen USA for distribution throughout the United States, and given that Hagen Canada owns Hagen USA, that Rolf Hagen is president of both companies, and that Horst Hagen purchases and selects new products for both companies. Accordingly, this Court rejects Hagen Canada's defense of lack of personal jurisdiction.

### B. *Copyright Infringement Claim*

As for Blue Ribbon's copyright infringement claim against Hagen Canada and Hagen USA, Blue Ribbon seeks statutory damages for infringement of its copyrighted sketches, Exhibits 1 through 4.[3] Hagen Canada and Hagen USA conceded at trial that six of the 12 Relics ornaments at issue are substantially similar to two of Blue Ribbon's copyrights, namely, that the Lighthouse (Exhibit 8) is substantially similar to copyrighted sketches in Exhibit 2; and that the Driftwood (Exhibit 9), Driftwood Arch (Exhibit 9), Single Barrel (Exhibit 7), Double Barrel (Exhibit 7), and Airplane (Exhibit 6) are substantially similar to copyrighted sketches in Exhibit 1. This Court agrees that these six Relics ornaments clearly are sufficiently similar to copyrighted sketches in Exhibits 1 and 2.

As for the remaining six Relics ornaments at issue, this Court concludes that, upon comparison of these Relics ornaments with Blue Ribbon's copyrighted sketches, the remaining six Relics orna-ments are substantially similar to Blue Ribbon's copyrighted sketches, namely, that the Treasure Chest (Exhibit 5), Single Skull (Exhibit 10), Double Skull (Exhibit 10), and Anchor (Exhibit 11) are substantially similar to copyrighted sketches in Exhibit 1; that the Coral (Exhibit 8) is substantially similar to copyrighted sketches in Exhibit 3; and that the Broken Boat (Exhibit 11) is substantially similar to a copyrighted sketch in Exhibit 4. The general test in determining substantial similarity is "whether an average lay observer would overlook any dissimilarities between the works and would conclude that one was copied from the other," the so-called "ordinary observer test." *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,* 166 F.3d 65, 70 (2d Cir.1999). However, where the works at issue contain both protectible and unprotectible elements, "the test must be 'more discerning,' excluding the unprotectible elements from consideration." *Id.* Under this "more discerning observer test," the inquiry is whether " 'the copying is quantitatively and qualitatively sufficient' to support a finding of infringement." *Id.* (quoting *Ringgold v. Black Entertainment Television, Inc.,* 126 F.3d 70, 75 (2d Cir. 1997)) Under the ordinary observer test, it is clear that the ordinary observer would view these six Relics ornaments as being copied from the copyrighted sketches in Exhibits 1, 3, and 4, overlooking any differences given the close resemble in the overall appearance of these Relics ornaments and sketches. Even a "more discerning" observer, considering only protectible elements of Blue Ribbon's copyrighted sketches, would consider these six Relics ornaments substantially similar to the copyrighted sketches not only in shape, layout, and overall appearance, but in the particular expression of their concepts.

---

**3.** These copyright registrations were filed before the alleged infringement occurred. The three later registrations, Exhibits 57 through 59, were filed the date this infringement ac-tion was commenced; consequently, as Blue Ribbon concedes, it is not entitled to statutory damages concerning these copyrights.

This Court also concludes that whether viewed by the ordinary observer or by the more discerning observer (considering only the protectible elements), the 12 Relics ornaments at issue are substantially similar to their counterpart copyrighted three-dimensional Exotic Environments ornaments (produced by Blue Ribbon based on its copyrighted sketches), given the close resemblance of the ornaments in color, shape, configuration, and overall appearance, and in the particular expression of their concepts.

Similarly, as the Relics catalog sheets contained photographs of the infringing Relics ornaments, the catalog sheets and products catalogs (containing the Relics catalog sheets) are substantially similar to Blue Ribbon's copyrighted sketches and three-dimensional ornaments.

■ As for Hagen USA, as Blue Ribbon argues in its post-trial brief, Hagen USA's distribution of the infringing Relics ornaments in the United States infringed Blue Ribbon's exclusive distribution right. *See* 17 U.S.C. § 106(3). Hagen USA also infringed Blue Ribbon's copyrights by importing the infringing Relics ornaments from outside the United States. *See id.* §§ 106(3), 501(a), 602(a); *see also GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.,* 782 F.Supp. 763, 772 (W.D.N.Y.1991) ("The distribution right also includes the right to import copies of the work." (citing 17 U.S.C. § 602(a); 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8.11[B] (1990))). In addition, Hagen USA infringed Blue Ribbon's copyrights by importing the infringing Relics catalog sheets and products catalogs (containing the Relics catalog sheets) from outside the United States and distributing those items in the United States. *See* 17 U.S.C. §§ 106(3), 501(a), 602(a).

■ As for Hagen Canada, Hagen Canada's production of the Relics catalog sheets and products catalogs (containing the Relics catalog sheets) in Canada and distribution of the infringing Relics ornaments in Canada do not constitute infringement of Blue Ribbon's exclusive rights under its United States copyrights (particularly Blue Ribbon's reproduction and distribution rights, *see* 17 U.S.C. §§ 106(1), (3)), as the United States copyright laws generally do not have extraterritorial application. *See Update Art, Inc. v. Modiin Pub., Ltd.,* 843 F.2d 67, 73 (2d Cir.1988); *see generally* 2 William F. Patry, *Copyright Law and Practice* 1089–91 (1994) ("Any act of infringement that occurs in a foreign country does not arise under an Act of Congress, and therefore, the district courts do not have jurisdiction over such acts."). The exception, not applicable here, is "when the type of infringement permits further reproduction abroad—such as the unauthorized manufacture of copyrighted material in the United States." *Id.* (citing *Peter Starr Prod. Co. v. Twin Continental Films, Inc.,* 783 F.2d 1440, 1443 (9th Cir.1986); *Robert Stigwood Group Ltd. v. O'Reilly,* 530 F.2d 1096, 1100–01 (2d Cir.1976)).

■ However, a defendant can be liable for contributory infringement, even for acts committed outside the United States, by inducing or contributing to another's infringement occurring in the United States by supplying such other person with the instruments for committing the infringement, provided the defendant knew or should have known that the other would or could reasonably be expected to commit the infringement. *See GB Mktg. USA Inc.,* 782 F.Supp. at 772–73 (holding that "Congress's use of the phrase 'to authorize' [in 17 U.S.C. § 106] was intended to establish the liability of a 'contributory infringer,' which is a person 'who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another,' " and that "when a foreign corporation is alleged to have purposefully injected itself into the American market by shipping infringing goods here—regardless of whether it does so directly or through an importer—the

defendant should not be allowed to use the principle of non-extraterritoriality to shield itself from the reach of American courts and American copyright law" (quoting H.R.Rep. No. 1476, 94th Cong., 2d Sess. 61 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5674; and citing *Gershwin Pub. Corp. v. Columbia Artists Mgt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971))); *see also G.H. Bass & Co.*, 21 U.S.P.Q.2d at 1864–65; *Levi Strauss & Co.*, 222 U.S.P.Q. at 973–74; *Patry, supra*, at 1091 n. 101 ("Of course, where unauthorized copies are made overseas and then shipped into the United States, jurisdiction will exist in the United States over the copies shipped into the United States."). Thus, notwithstanding Hagen Canada's contentions, Hagen Canada's acts occurring outside the United States can provide a basis for liability in this action. *See, e.g., GB Mktg. USA Inc.*, 782 F.Supp. at 772–73 (stating "[s]ince one of those rights [under 17 U.S.C. § 106] is the right to authorize importation, then, one who knowingly induces, causes, or contributes to the importation of a copyrighted work may be liable as a contributory infringer," and finding subject matter jurisdiction proper over defendant German corporation, bottler of mineral water, for contributory copyright infringement where defendant allegedly affixed infringing labels, designed for the American market, on bottled water in Germany with knowledge and intent that water would be exported to United States and distributed there). Considering these principles, this Court concludes that the evidence sufficiently established that Hagen Canada induced or contributed to Hagen USA's infringement of Blue Ribbon's copyrights by procuring the infringing Relics ornaments (together with display cards it designed and procured) and producing and sending the Relics catalog sheets and products catalogs to Hagen USA, all under circumstances where it knew or should have known that Hagen USA would or could reasonably be expected to commit the infringement of Blue Ribbon's copyrights. Accordingly, Hagen Canada is liable as a contributory infringer to Hagen USA's infringement.

 As for the measure of statutory damages under the Copyright Act, statutory damages may range from $500 up to a maximum of $20,000 per copyright infringed. *See* 17 U.S.C. § 504(c)(1). However, where the infringement is "willful," damages may be increased to $100,000 per copyright infringed. *See id.* § 504(c)(2). Copyright infringement is "willful" when it is done with knowledge that it is in violation of the owner's copyright or with "reckless disregard" for the copyright owner's rights. *See N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir.1992); *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1114–1115 (2d Cir.1986); *Central Point Software, Inc. v. Global Software & Accessories, Inc.*, 880 F.Supp. 957, 967 (E.D.N.Y.1995); *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F.Supp. 730, 733 (S.D.N.Y.1981). Blue Ribbon argues that the infringement was willful and requests an award of $100,000 for each of the four copyrights infringed, to be imposed jointly and severally on Hagen Canada and Hagen USA.

 Upon consideration, this Court concludes that the infringement was willful. Hagen Canada and Hagen USA had access to Blue Ribbon's Exotic Environments ornaments and were advised by Blue Ribbon, prior to the infringing acts, that the Exotics Environments ornaments were protected by copyrights. In this respect, Cohen had informed Rolf Hagen (president of both companies) and Horst Hagen (purchaser and selector of new products for both companies) of the copyright protections. In addition, Hagen Canada had received the Exotic Environments ornaments, with copyright notices on them and their hang tags and boxes, as samples and by purchase for resale. Under the circumstances, particularly given the close resemblance of the infringing Relics ornaments to Blue Ribbon's copyrighted designs and ornaments, this Court concludes that Hagen Canada and Hagen

USA acted with knowledge, or, at least, with reckless disregard, of Blue Ribbon's rights in committing their infringing acts.[4] Therefore, this Court concludes that the infringement willful.

■ As for the amount of statutory damages, based on this Court's finding of willful infringement, but considering such circumstances as Hagen USA's relatively low net sales of infringing Relics ornaments (i.e., $44,307), Blue Ribbon is awarded $20,000 in damages for each of the four copyrights at issue, for a total of $80,000. Such an award should adequately serve as sufficient compensation to Blue Ribbon and deterrence to Hagen Canada and Hagen USA and potential infringers, see *Fitzgerald Pub.Co.*, 807 F.2d at 1117.

As for Blue Ribbon's request for a permanent injunction, the request is granted, in a form to be determined by the Court. *See, e.g., Central Point Software, Inc.*, 880 F.Supp. at 966 (granting permanent injunction where plaintiff established liability and threat of continuing violations); *Encyclopaedia Britannica Educ. Corp. v. Crooks*, 542 F.Supp. 1156, 1187–88 (W.D.N.Y.1982) (same).

As for Blue Ribbon's request for attorney's fees and costs, the Copyright Act provides that a court, "in its discretion may allow the recovery of full costs by or against any party ... [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Given this Court's finding of willful infringement, Blue Ribbon's request for attorney's fees and costs is granted, in an amount to be determined by the Court.

## C. Unfair Competition Claim

■ As for Blue Ribbon's unfair competition claim, Hagen Canada and Ha-

gen USA argue that this claim is preempted by the Copyright Act, see 17 U.S.C. § 301. In deciding whether a state unfair competition claim is preempted, the Second Circuit employs the "extra element" test, which holds that

> if an "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption."

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2nd Cir.1992) (quoting 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B] ). "The extra element must change the 'nature of the action so that it is qualitatively different from a copyright infringement claim.' " *Id.* (quoting *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985)). Where the unfair competition claim is "grounded solely in the copying of a plaintiff's protected expression," it is preempted. *Id.*

Upon consideration of the claim and evidence, this Court concludes that Blue Ribbon's unfair competition claim was "grounded solely in the copying of its protected expression" and was not "qualitatively different from [its] copyright infringement claim." *Id.* Accordingly, Blue Ribbon's unfair competition claim is preempted, and, therefore, it is dismissed. Consequently, there is no basis for Blue Ribbon's request for punitive damages.

The parties are directed to contact the Court to set a date for submission of papers and a hearing for determination of attorney's fees and costs and an appropriate permanent injunction. In addition, the Court notes that Blue Ribbon argues, in its post-trial brief, that it is entitled to prejudgment interest. Defendants have not

---

**4.** Blue Ribbon also argues that Hagen USA's sale of infringing Relics ornaments to Hagen Germany after this action was commenced constituted an act of infringement and dem-

onstrates willfulness. Given the Court's determinations of infringement and willfulness, the Court need not reach this issue.

addressed this request. Accordingly, the request for prejudgment interest can also be addressed in further submissions.

SO ORDERED